UNITED STATES of America,
Appellee,

v.

Jennifer J. WYSONG, Appellant.

No. 75–2433.

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1976.

**346**

Murray B. Guterson (argued), Seattle, Wash., for appellant.

J. Ronald Sim, Asst. U. S. Atty. (argued), Seattle, Wash., for appellee.

## OPINION

Before BROWNING, DUNIWAY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was indicted, tried and convicted of: (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, (2) distribution of cocaine in violation of 21 U.S.C. § 841, and (3) possession of cocaine with intent to distribute in violation of the same section. We affirm.

## THE PROCEEDINGS BELOW

On April 4, 1975, appellant moved to suppress evidence and testimony arising from her arrest and the subsequent search of her suitcase on January 8, 1975. She urged four grounds in support of her motion: (a) lack of probable cause for the arrest, (b) failure of the officer to give the notice required by 18 U.S.C. § 3109 before entry, (c) insufficient affidavit in support of the search warrant and (d) seizure of a ledger book not designated in the search warrant. Appellant did not there claim, as she does here, that the arrest was illegal because the agents failed to obtain an arrest warrant before entering her motel room.

After a full hearing, the court entered findings of fact and an order denying the motion to suppress. The items which were the subject of the motion were received in evidence during the course of appellant's trial. Cook, a codefendant, entered a guilty plea and testified for the government.

## FACTUAL BACKGROUND

The appellant, who lived in California, met Robert Cook initially indicted as a co-conspirator, in Seattle during the summer of 1974. Cook, at the time, was living with appellant's sister Joanne. While in Seattle, appellant entered into an arrangement under which Cook sold to others cocaine obtained by appellant in California.

In the fall of 1974, Cook and Joanne moved to Boise, Idaho, where Cook met others dealing in cocaine and made arrangements to supply them with cocaine he received from appellant. In early December, appellant delivered three ounces of the drug to Cook and Joanne in Boise. Two ounces of this supply were delivered to one of Cook's acquaintances who sold it to a special agent acting in an undercover capacity. The agent paid the final $200.00 due on this delivery directly to Cook. Negotiations were then made to purchase a larger quantity of the drug, appellant taking part in the negotiations by telephone. On the morning of December 24th, she arrived in Boise with five ounces of cocaine, two ounces of which were eventually sold by Cook to the agent in appellant's motel room. In trial, the motel manager identified appellant as the person who rented the room, using the name "Jennifer Wilson."

In early 1975, Cook and Joanne returned to Seattle. Prior to leaving Idaho, Cook had arranged to contact the agent in Seattle. This he did, negotiating a sale of four ounces of cocaine for $5,000.00. Cook contacted appellant who agreed to fly the cocaine to Seattle the following day with the understanding that she would contact him on arrival. Following through on this arrangement, appellant checked into the Sea-Tac Inn at the Seattle Airport and called Cook. She was under surveillance by govern-

ment agents who followed her to her room in the Inn. While in the room, she delivered to Cook four ounces of cocaine which he took to his motel. He then called the agent and delivered the cocaine for $5,000.00 in cash. Cook and the agent then discussed a two pound transaction which they planned for the immediate future.

After the delivery of the four ounces, Cook was followed back to appellant's room at the Inn. He testified that they drank champagne together and settled their accounts. Appellant had a ledger book in which she made entries relating to the four ounce transaction of January 6th, as well as the second transaction in Idaho. Cook reviewed these figures with her, some of which were made in his presence. The front page had been removed from the ledger book. On January 7th, a special agent was admitted to the room by the motel manager and in the wastepaper basket he found torn scraps of paper which he was able to reassemble. They appeared to be a page from a ledger book with figures that seemed to relate to a narcotics transaction. In the trial, expert testimony established that the torn page had, in fact, been part of appellant's ledger book.

On the 7th, Cook arranged with the undercover agent for the sale which would lead to his own arrest and that of appellant. Appellant returned to Seattle on January 8th and stayed at another motel, where she gave Cook eleven ounces of cocaine. Cook was under continuous surveillance from the time he left appellant's room until he sold the cocaine to the agent. Immediately after the sale, Cook was arrested. Shortly after the arrest, the agents watching appellant's room were radioed and told to arrest the woman in the room where Cook had obtained the cocaine. Her identity at that time was not know to the agents. Appellant had registered as "Linda Short." One agent pounded on the door, stating loudly "Federal Agents, open up." After no response came from the room for a period of five to ten seconds, the agents used a motel pass key to en-

ter. Appellant was seated on the bed next to a suitcase and was placed under arrest and taken to government headquarters. She elected to keep the suitcase with her. No search of the room or of the suitcase was made at that time and appellant was informed that a federal search warrant would be obtained. Although she executed a consent to search form, the agents delayed the search of the suitcase until after the search warrant was delivered. The search warrant authorized a search for cocaine and premarked currency. None was found in the suitcase. However, a ledger book was found, and leafing through the book, the agent discovered that the torn ledger page he previously obtained was probably removed from the ledger.

## APPELLANT'S CONTENTIONS

We summarize appellant's principal issues as follows:

(a) Should appellee have obtained an arrest warrant?

(b) Did the arresting officers violate 18 U.S.C. § 3109 by failing to give proper notice of their authority and purpose before entering appellant's motel room?

(c) Was there probable cause for the issuance of the search warrant?

(d) Should the ledger have been suppressed because it was not mentioned in the search warrant?

(e) Should a new trial have been granted?

## ARREST WARRANT

■ In her brief on appeal on the issue of whether the officers should have obtained an arrest warrant, appellant not only concedes, but argues, that the police had probable cause to make the arrest for at least two hours prior to the entry. Appellant urges that there was no emergency and that the police officers had adequate time in which to obtain an arrest warrant. She concedes that this issue was not raised in the suppression hearing, during the course of the trial, or on the motion for a new

trial. In these circumstances, we invoke the fundamental rule that if objections are not made in the lower court, the issue cannot be raised on appeal, except in a very exceptional situation wherein it appears to be necessary in order to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. Here such a situation does not exist. Generally, we do not invoke the "plain error" provision of Rule 52(b), FRCrimP, where, as here, the appellant had many opportunities to raise the issue and makes no claim that there was no probable cause for the arrest. In support of our view that we should not consider this contention see *United States v. Brooks*, 473 F.2d 817 (CA9 1973); *United States v. King*, 472 F.2d 1, 12, 13 (CA9 1972); *United States v. Johnson*, 469 F.2d 281 (CA9 1972), and *Marshall v. United States*, 409 F.2d 925 (CA9 1969).

## KNOCK AND ENTRY

■ Next, appellant argues that the arresting officers violated the provisions of 18 U.S.C. § 3109 by failing to give proper notice of their authority and purpose before entering the motel room. In the hearing on the motion to suppress, the three officers testified that one of them in a loud voice said something like "Federal Agents, open up." and waited for approximately five to ten seconds before entering the room with the pass key. During the period of waiting, there was no response from the inside. The door knock of the officer was so loud that it drew the attention of a number of people down the hallway. The affidavit of appellant that she heard neither the knocking or any announcement, but only the sound of the key in the door was not accepted by the district judge, who found that the knock and the words spoken were loud. He also found that the agents were apprehensive that the occupant might be destroying narcotics in her possession. The clearly erroneous rule is applicable to the district court findings on a motion to suppress. *Costello v. United States*, 324 F.2d 260, 261

(CA9 1963); *United States v. Page*, 302 F.2d 81, 85 (CA9 1962). The findings of the district court on this issue are not clearly erroneous.

■ *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), relied upon by appellant is wide of the mark. There, the officers knocked at the door and heard an occupant say, "Who's there?", and then responded in a low voice, "Police." Here the police spoke in a loud voice, knew that the occupant had been dealing in narcotics and were concerned that she might destroy the drugs if given adequate opportunity. No such exigent circumstances were present in *Miller*. Judge Friendly placed the *Miller* decision in proper perspective in *United States v. Manning*, 448 F.2d 992, 1001 (CA2 en banc 1971), cert. denied 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548. A case closely in point is *United States v. Squella-Avendano*, 447 F.2d 575, 583 (CA5 1971), in which the district court order suppressing the evidence was reversed where the agents had merely announced, "Police. Open the door." It was there held that a more elaborate announcement of purpose by the agents would have been a useless gesture. Here the officers were just as certain that the occupants of the room knew of the purpose of the announcement and knew that a violation of the narcotics laws had been committed in the room, as were the officers in *Squella-Avendano*. Our court has held that where there are exigent circumstances, a total non-compliance with § 3109 may be excused. *See United States v. Cisneros*, 448 F.2d 298 (CA9 1971), and *Dickey v. United States*, 332 F.2d 773 (CA9 1964), cert. denied 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545. The potential removal or destruction of evidence is an important factor to be considered in connection with the entry of the room. *United States v. Curran*, 498 F.2d 30, 35 (CA9 1974); *United States v. Bustamante-Gamez*, 488 F.2d 4 (CA9 1973). On this record it would seem that the district court might be in error, as a matter of law, if it had not upheld the entry.

## SUFFICIENCY OF SEARCH WARRANT

■ Appellant's challenge to the sufficiency of the search warrant under which the officers searched the room and seized the suitcase borders on the frivolous. The three page affidavit which formed the basis for the search precisely details the occurrences on January 6th and 8th in Seattle where Cook was under constant surveillance and was noted entering the appellant's room shortly before he produced a large quantity of cocaine for sale to the government agent. It shows that the officials had reliable information appellant was carrying the type of bag described in the warrant. The affidavit should be tested in a common sense and realistic fashion. *United States v. Ventresca*, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). To go into detail of what is stated in the affidavit is unnecessary. The affidavit was more than sufficient to support the search warrant. *United States v. Harris*, 403 U.S. 573, 577–583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

## THE LEDGER

■ Under this heading, the appellant argues that the ledger should have been suppressed because it was not within the scope of the warrant. She argues that the plain view doctrine mentioned in *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), does not apply where the officers have been alerted to the existence of an article. The weakness of this argument is that the officers had no prior knowledge of the ledger, but only of a ledger sheet. In *Coolidge*, the police knew of the location of the article, intended to seize it, but failed to have it included in the search warrant. In the search for the cocaine and the marked money mentioned in the warrant, it was reasonable, as the district court found, to leaf through the ledger.

*Cady v. Dombrowski*, 413 U.S. 433, 440, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), is closely in point. There, two items were seized which were not listed in the application for the warrant authorizing the search of an automobile. Here, the warrant authorized the search of a suitcase. The Supreme Court held that the police were authorized to seize the items even though not specifically described in the warrant. The Court said that the two items were seized ". . . while a valid warrant was outstanding, and thus could not be considered unconstitutional . . . ." *Id.* at 449, 93 S.Ct. at 2532. The suitcase in question was just as transitory as the automobile in *Cady*. The seizure of the ledger book is fully supportable under the theory that the ledger itself was in plain view on the search of the suitcase and gave the officers probable cause to believe that the ledger sheet they had previously found in the wastepaper basket was part of the ledger and thus connected with a narcotics transaction. The finding of the district court on the motion to suppress is not clearly erroneous, nor did the district court commit error in receiving the ledger and sheet in evidence.

## MOTION FOR NEW TRIAL

Appellant claims that the district court should have granted a new trial because: (1) of the admission in evidence of prior criminal acts of appellant, and (2) of the failure to admit in evidence an exhibit offered by appellant. We are convinced that these contentions, together with others urged by appellant are groundless.

## CONCLUSION

Finding no error, we affirm the judgment of the district court.