**UNITED STATES, Appellant,**

v.

**Katherlean COVINGTON and Joseph W. Bailey, Appellees.**

**No. 12069.**

District of Columbia Court of Appeals.

Argued Oct. 11, 1977.

Decided March 23, 1978.

---

Carol E. Bruce, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Anthony T. Podesta, Asst. U. S. Attys., Washington, D. C., were on brief, for appellant.

Edward R. McKenna, Washington, D. C., for appellee Covington.

William R. Herman, Public Defender Service, Washington, D. C., for appellee Bailey.

Before KERN, GALLAGHER and MACK, Associate Judges.

Opinion for the court by GALLAGHER, Associate Judge.

GALLAGHER, Associate Judge:

On September 1, 1976, Detective Peter Pressley and other officers from the Seventh District Vice Unit of the Metropolitan Police Department went to Apartment 1–A at 122 Irvington Street, Southwest, to execute a search warrant, the validity of which is not under attack here.

The warrant authorized a search of the premises for illegal drugs. One of the officers knocked on the front door. Appellee Bailey came to the door and without opening it, asked either "Who do you want?" or "Who is it?" According to Bailey, the officer asked whether there "was a resident living at that address by the name of Elliott."[1] Bailey testified he then said "no, turned and walked away, and that was it. The door came off the hinges." Detective Pressley stated that after the question the person on the other side of the door (*i. e.*, Bailey) "began to move away from the door in a fast motion, at which time, the sergeant, Sgt. Johnson, announced his identity, purpose and authority." Bailey testified that he did not hear this announcement. According to Detective Pressley, the officers waited fifteen to thirty seconds after the announcement with no response from inside the apartment before breaking down the door. At this point he saw one of the apartment's occupants running down the hall and into the bathroom. Detective Pressley, having chased this occupant, was able to grab a "tinfoil, containing a white

---

1. According to Detective Pressley, on the other hand, the officer responded with "a name that he had reason to believe that the people inside knew of."

powder" from the toilet before it was flushed down. He also testified that "[a] further search of the premises revealed narcotic paraphernalia, a quantity of marijuana, and a pistol."

In granting appellees' motion to suppress the government's evidence, the trial court concluded that the police officers' entry was illegal. Although the court did not make any explicit factual findings to aid us in our review, the court apparently based its ruling on the proposition that the police had used the ruse for the purpose of breaking into the apartment—rather than for gaining entry peacefully. We think that the trial court reached this conclusion because of a misunderstanding of the legitimate purposes of ruses and of the law concerning their use by police. The government appeals under D.C.Code 1973, § 23–104(a)(1).

We are aware that our review must afford appellees "all legitimate inferences from the testimony and uncontroverted facts of record," *Jenkins v. United States*, D.C.App., 284 A.2d 460, 462 (1971); and that we must accept the inferences drawn by the trial court as to the facts before it, if they are "supportable under any reasonable view of the evidence." *Scarbeck v. United States*, 115 U.S.App.D.C. 135, 155, 317 F.2d 546, 562 (1963), *cert. denied*, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963); *accord*, *Brooks v. United States*, D.C.App., 367 A.2d 1297, 1304 (1976); *Ward v. United States*, D.C.App., 365 A.2d 378, 381 n.3 (1976). We consider the trial court misunderstood the law, however, and consequently the order must be set aside. See D.C.Code 1973, § 17–305.

The following statements of the trial court illustrate its misunderstanding of the law concerning police use of ruses—as well as their legitimate purposes:

> [The police] . . . have a valid search warrant for a particular premises and instead of going up there and saying, "We're the police, we have a search warrant, please open the door", they say, "I'm Elliott", and hold their hand over

the peephole so they can't be viewed. I can't imagine why they would do that.

> \*   \*   \*   \*   \*   \*

> I can't imagine what their purpose would be in deception. It is obvious deception on the part of the police. Certainly—I don't think the Magistrate authorized deception.

> \*   \*   \*   \*   \*   \*

> One of the things I am not satisfied with is that we never got out in the open why the police would do that. Why would the police deceive when they have a search warrant? A valid search warrant, in my judgment, issued by a judge or Magistrate. And they are authorized to go into an apartment and search and seize. Why would they deceive the people inside? What purpose would be served by deceiving?

The court's preoccupation with the propriety of ruses by the police apparently obscured the issue being presented for decision. The issue was not so much why the police used the ruse, but whether the police had complied with the legal standards governing their right to break into the apartment. The issue should be approached with the recognition that, being armed with a valid search warrant, while standing outside the door the officers had reasonable grounds to believe there were narcotics inside the apartment—accompanied in all probability by one or more drug traffickers.

The standards governing the police conduct here are derived from 18 U.S.C. § 3109 (1970) (hereinafter cited as § 3109), which provides that

> [t]he officer may break open any outer or inner door or window of the house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The standards of police conduct required under this statute were judicially recognized to be applicable to police officers in the District of Columbia. *Miller v. United*

*States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).[2]

The purpose of these requirements is to protect "the individual's right of privacy in his house . . . " and to "safeguard . . . the police themselves who might be mistaken for prowlers and be shot by a fearful householder. . . . " *Miller v. United States, supra* at 313 & n. 12, 78 S.Ct. at 1198 (1958). The trial court was disturbed that this purpose would be frustrated here by the officers' deception. The following statement of the court illustrates this:

> See, there has to be some purpose for our requirement that the police announce themselves and their purpose for being there. There has to be a reason for that. I think it is clear the reason is to advise the people inside who is outside and what their purpose is, to permit the people inside to make some decision, whether to open the door and let them in, or make some decision about it, or to be prepared emotionally or otherwise for what is about to happen.

> Now, if they don't do that,—if they say, this is Chester, the whole purpose of the announcement requirement is frustrated, I think.

The purpose of the ruse manifestly was to deceive the occupants of the dwelling into opening the door—thereby permitting the police officers to obtain entry without force. The Supreme Court has approved the use of "[a]rtifice and stratagem . . to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).[3] This also applies to the use of ruses. *(Cecil) Jones v. United States*, 113 U.S.App.D.C. 14, 17–18, 304 F.2d 381, 384–85, *cert. denied*, 371 U.S. 852, 83 S.Ct. 73, 9

L.Ed.2d 88 (1962). This sort of ruse fulfills several purposes, all of which are consistent with the purposes of the announcement rule. By obtaining a peaceful confrontation with the occupant through a successful ruse in order to execute a search warrant, the police obviate the need to forcibly enter, eliminate damage to private property such as the door, and reduce the likelihood that the occupants will be able to destroy evidence, flee, or arm themselves against the officers. If the ruse is unsuccessful, *i. e.*, peaceful entry is not gained, then the police still have the alternative of complying with the appropriate announcement requirements.

A number of courts, including this one, have approved the use of a ruse to gain peaceful entry. They have held that where the police, whether armed with a warrant or not, have employed a ruse to gain peaceful entry into a person's house, no "breaking" occurred within the meaning of the announcement statute and therefore no announcement of authority and purpose was required, prior to entry. *E. g., (John) Jones v. United States*, D.C.App., 336 A.2d 535, 538 (1975), *cert. denied*, 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1975); *(Cecil) Jones v. United States, supra*, 113 U.S.App. D.C. at 17, 304 F.2d at 384; *United States v. Raines*, 536 F.2d 796, 800 (8th Cir. 1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. DeFeis*, 530 F.2d 14, 15 (5th Cir. 1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Beale*, 445 F.2d 977, 978 (5th Cir. 1971), *cert. denied*, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972); *United States v. Syler*, 430 F.2d 68, 70 (7th Cir. 1970); *Ponce v. Craven*, 409 F.2d 621, 626 (9th Cir. 1969) (considering an almost identical California announcement

---

**2.** Express statutory standards governing D.C. police conduct in such situations were in effect from 1970 through 1974 under D.C. Code 1970, § 23–591. That statute was repealed, Act of Oct. 26, 1974, Pub. L. No. 93–481, § 4(a), 88 Stat. 1455, *as amended by* Act of Jan. 3, 1975, Pub. L. No. 93–635, § 16, 88 Stat. 2178, and the D.C. police are governed by the same judicially recognized standards that existed before 1970.

*See* Conference Report, H. R. Rep. No. 93–1442, 93d Cong., 2d Sess. 5–6 (1974).

**3.** Furthermore, the Supreme Court has acknowledged that "[c]riminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958).

statute). *Contra Bowers v. Coiner*, 309 F.Supp. 1064, 1070 (S.D.W.Va.1970). At least two cases have held the police entry illegal where the police used a ruse to attempt to gain peaceful entry, but then applied force to prevent the door from being closed on them. *E. g., Miller v. United States, supra; Gatewood v. United States*, 93 U.S.App.D.C. 226, 228–29, 209 F.2d 789, 791–92 (1953).[4] The critical factor in each of those cases, however, was that the police used force to prevent the door from being closed without *first* announcing their authority and purpose. *Id.*

The trial court here was aware of the decision in (*John*) *Jones v. United States, supra.* In that case the ruse was successful. The officers had a search warrant and went to an apartment and knocked on the door. When someone from inside responded, asking who was there, one of the officers gave a name and asked for someone who was believed to be inside. The person inside opened the door several inches and one of the officers pushed open the door even further and then the officers all entered, announcing that they were police and had a search warrant. That was approved by the court as not involving a breaking. *Id.* at 538. Although the trial court here was aware of the circumstances of the holding, it distinguished that case from the situation here because there was no breaking by the police in *Jones.* What the court failed to note was that in *Jones* the reason no break-

ing occurred was primarily because the ruse was successful and therefore the announcement requirements did not come into play. Here, however, the ruse was unsuccessful. The trial court's conclusion apparently stems from a narrow reading of *Jones* as well as a lack of appreciation of the valid purposes of such ruses.

■ We agree with the trial court that a purpose of the announcement statute is to give the occupant an *opportunity* to respond, either affirmatively or negatively. But this does not mean the officers must wait for a definite response by the occupant, as frequently there will be none. Rather, the police must announce their authority and purpose and then wait until *they reasonably believe* they have been refused admittance.[5] *United States v. Woodring*, 444 F.2d 749, 751 (9th Cir. 1971); *McClure v. United States*, 332 F.2d 19, 22 (9th Cir. 1964); *cf. Martin v. United States*, 341 F.2d 576 (5th Cir. 1965); *United States v. West*, 328 F.2d 16, 18 (2d Cir. 1964). Footsteps going in a reverse direction may be grounds to believe the request to enter has been rejected. *McClure v. United States, supra* at 22.

■ The trial court's task here is to determine if the police, prior to forcible entry: (1) announced their authority and purpose, and (2) reasonably believed they had been refused admittance. Since the trial court has made no such findings,[6] we must re-

---

4. Neither of these cases specifically found the entry to be unlawful as a violation of § 3109. However, the standards applied to the police conduct in each case were virtually identical to the requirements of § 3109. *See Miller v. United States, supra*, 357 U.S. at 306, 78 S.Ct. 1190; *Gatewood v. United States, supra*, 93 U.S.App. D.C. at 228, 209 F.2d at 791.

5. Appellee Bailey acknowledges this proposition. He agrees that "the phrase 'refused admittance' is not restricted to an affirmative refusal." Brief for Appellee Bailey at 10, citing *Masiello v. United States*, 115 U.S.App.D.C. 57, 58, 317 F.2d 121, 122 (1963). Furthermore, Bailey states the appropriate standard to evaluate the forcible *entry* to be the *reasonableness of the police officers' conclusion*, in the circumstances of this case, that entry was being refused. Brief for Appellee Bailey at 10. *McClure v. United States*, 332 F.2d 19, 22 (9th Cir. 1964),

cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965).

6. As the D.C. Circuit Court of Appeals stated in *Masiello v. United States, supra*, 115 U.S.App. D.C. at 59, 317 F.2d at 123, in connection with its concern for the "importance of compliance with § 3109 . . . ."

close cases such as this will always receive careful appellate scrutiny. It is very desirable as an aid to appellate review that the facts concerning the required preliminary steps to entry should be developed and the factors relied on by the prosecution should appear in the record and be the subject of findings. The ruling on a motion to suppress . . . should be accompanied by findings in aid of review, particularly in a close case . . . .

verse and remand[7] for this purpose. After making these findings, the court should enter its conclusions in the light of this opinion.

*Reversed and remanded with instructions.*

KERN, Associate Judge, concurring:

My view of this case differs somewhat from that of the majority as I will develop below.

The police went to a certain address armed with a warrant to search a specific apartment for illegal drugs. Once they were outside the apartment, they undertook two separate actions: first, they sought to deceive those inside into admitting them by knocking, asking for a named person, and covering the peephole in the door to prevent themselves from being seen; and next, when the occupants who answered from inside did not open the door, the police announced their identity and then broke the door down. Upon entry the police found various articles of contraband, including a pistol and a quantity of marijuana, and prevented an occupant from flushing white powder down the toilet.

Each tactic employed by the police, *viz.,* (1) the ruse to achieve peaceful entry and (2) the breaking and entry after giving notice of authority and purpose and upon their belief they had been refused admittance, was in and of itself lawful.[1] Appellee Bailey argues, however, that the two methods *taken together* constituted an unlawful search and hence the trial court's suppression in the instant case should be affirmed. Specifically, he argued (Brief at 9) that the ruse "caused the occupant to move away from the door so that he was not in a position to hear the announcement [of authority and purpose] . . . and that it was unreasonable in those circumstances for the police to conclude that they were being refused admittance." Appellee Bailey also argued (Brief at 7) that "the natural and foreseeable consequences of that conduct [the unsuccessful ruse] is to drive away the person on the other side of the door—which is exactly what happened here." In sum, I understand appellee Bailey's assertion to be that under the peculiar circumstances of this case, the ruse, albeit valid in and of itself, caused conduct inside the apartment enabling the police to claim, wrongfully, that appellees had refused to

---

**7.** In light of our disposition, we do not reach the issue, argued by appellee Bailey, that the officers were unreasonable in believing that entry was refused. We do note, however, that courts have sanctioned forcible entries under § 3109 when the police have knowledge that there are people within the premises who are simply not responding to the officers' demand for entry. *E. g., United States v. Cox,* 462 F.2d 1293, 1307 (8th Cir. 1972), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974) (no specific time stated, but made announcement twice and heard indecipherable conversation inside); *United States v. Poppitt,* 227 F.Supp. 73, 80 (D.Conn.1964) (ten to fifteen seconds). *Cf. United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976) (five to ten seconds). Finally, courts have approved forcible entries under § 3109 after somewhat longer waits when the police did not know but had only a reasonable belief that someone was inside the premises to be searched. *E. g., United States v. James,* 528 F.2d 999, 1017 (5th Cir. 1976) (no time specified, but failure to respond for "reasonable time"); *United States v. Woodring,* 444 F.2d 749, 751 (9th Cir. 1971) (one minute); *United States v. Hanna,* 260

F.Supp. 430, 432, 434 (S.D.Fla.1966), *rev'd on other grounds,* 393 F.2d 700, *aff'd on rehearing,* 404 F.2d 405 (5th Cir. 1968), *cert. denied,* 394 U.S. 1015, 89 S.Ct. 1625, 23 L.Ed.2d 42 (1969) (one minute and 15 seconds). As stated in *United States v. James, supra* at 1017, "[i]t was not required that the occupants of the house verbally or affirmatively refuse to respond to the officers' demand. Failure to respond within a reasonable time was tantamount to a refusal. A reasonable time is ordinarily very brief."

As we have indicated, one should not lose sight of the fact that by virtue of the valid search warrant, the police had reasonable grounds to believe there were narcotics in the apartment. The potential removal or destruction of that evidence is a factor to consider. *See United States v. Wysong, supra* at 348. It is common knowledge that where there is a warning of a police approach narcotics often quickly are flushed into the city sewer.

**1.** The police testimony concerning their breaking and entry was not contradicted.

admit them after their announcement of authority and purpose.

The trial court appeared to be persuaded by this argument for it stated during argument on the suppression motion (Record at 19):

THE COURT: . . . You call yourself "Elliott," so you get somebody to come to the door and when you announce that you're the police, they are in a position to move away from the door, so that you hear them fleeing so that you can knock the door down.

Once the ruse failed, the requirements of 18 U.S.C. § 3109 became applicable. Judge McGowan of the District of Columbia federal circuit court of appeals made a helpful analysis recently of the "refused admittance component" of the statute providing for forceful entry:

As this and other courts have recognized, the "refused admittance" component of 18 U.S.C. § 3109 stands on a different practical footing from the other requirement of "notice of [police] authority and purpose." To establish the latter, there must be proof of affirmative action by the police, whereas in the case of the former, particularly in the narcotics context, explicit verbal response is hardly to be expected. In such circumstances the statute can only be, but is properly, satisfied by evidence of non-verbal conduct indicating a lack of purpose promptly to respond to the police announcement.[1]

[1] A recent statement of the law in this regard is contained in *United States v. Ortiz*, 445 F.2d 1100, 1102 n.(8th Cir. 1971), *cert. denied*, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971):

The phrase "refused admittance" is not restricted to an affirmative refusal. *United States v. Chambers*, 382 F.2d 910 (6th Cir. 1967); *Masiello v. United States*, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963). Rarely if ever is there an affirmative refusal. More often the officers meet with silence as the occupants seek to destroy evidence or escape. Accordingly, whether the failure to respond to an officer's knock constitutes refused admittance is a question of the circumstances. *See United States v. Augello*, 368 F.2d 692 (3rd Cir.

1966); *McClure v. United States*, 332 F.2d 19 (9th Cir. 1964). *Ortiz* upheld the execution of a search warrant by narcotics agents at 6:45 A.M. on their testimony that, when there was no "immediate response" of any kind to their announcement, the door was forced.

[*United States v. Smith*, 171 U.S.App.D.C. 342, 349, 520 F.2d 74, 81 (McGowan, J., concurring and dissenting), *aff'd following remand*, 173 U.S.App.D.C. 313, 524 F.2d 1287 (1975).]

The federal circuit court here had earlier commented in *Masiello v. United States*, 115 U.S.App.D.C. 57, 58, 317 F.2d 121, 122 (1963):

Section 3109 provides that the officer may break in to execute a search warrant if, after notice of his authority and purpose, "he is refused admittance." Nowhere is there any definition of how long officers must wait after giving the statutory notice of authority and purpose. The purpose of the statute, among other things, is to allow the occupant to open the door to admit officers who are legally authorized to enter so that they may execute their duties with the least possible inconvenience to the occupant. But the phrase "refused admittance" is not restricted to an affirmative refusal. Indeed it would be an unusual case coming before the courts where an occupant affirmatively "refused admittance" or otherwise made his refusal known verbally after being given notice pursuant to § 3109. Where, as here, after giving the required notice the officers hear sounds which indicate to them that the evidence sought by the warrant may be in process of destruction, execution of the warrant need not be deferred long enough to allow completion of the process.

I am not persuaded by the argument of appellee Bailey that the peculiar facts of this case demonstrate that the ruse so prejudiced him as to invalidate the subsequent police breaking and entering into the apartment where he was. His assertion that the ruse caused the occupants to move away from the door so as to be unable (a) to hear

the police announcement and (b) to respond to the door is not borne out in the record. Rather, the police ruse appears to have been designed to lure the occupants to, not away from, the door; indeed, the trial court seems to have concluded the occupants came to the door and heard the police announcement (Record at 19). However, the court made no specific finding to this effect. Moreover, the trial court made no explicit finding on whether the police made an announcement of authority which the statute requires before *forcible* entry is permitted.

While it is certainly arguable that on this record *both* a showing of announcement of purpose and a subsequent refusal of admittance have been made by the prosecution at the suppression hearing, I think we should be especially careful in approving forcible entries in executing search warrants; indeed, the Supreme Court has reminded us "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958).

Accordingly, I join in the remand ordered by the majority for further proceedings at which these statutory criteria can be specifically considered and expressly determined.