**UNITED STATES of America**

v.

**Nestor GIRALDO, Defendant.**

**No. CR–90–198.**

United States District Court, E.D. New York.

Aug. 24, 1990.

Andrew J. Maloney, U.S. Atty. by Patricia Notopoulos, Asst. U.S. Atty., New York City, for U.S.

Lawrence M. Herrman (Bennett M. Epstein, of counsel), New York City, for Giraldo.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Defendant was indicted on one count of possession with intent to distribute cocaine on March 15, 1990. He moved to suppress evidence found in a search of his apartment. An evidentiary hearing was held. The court credited the testimony of the government agents and made the following findings of fact.

One of the agents knocked on the door of defendant's apartment. She pretended to be a gas company worker and told defendant she was checking for a gas leak. Defendant opened the door, and the agent asked him if he smelled gas. Defendant invited the agents in, believing them to be gas company workers. The agents entered the apartment and identified themselves as police officers. They did not draw their guns. They asked defendant to identify himself, which he did. One of the agents asked defendant if there were any drugs, weapons or other persons in the apartment. He answered no. The agents asked for permission to search the apartment. Defendant granted it. There was no overt coercion. Defendant then read, understood and signed a statement of written consent to search. All of these events occurred within a few minutes.

The agents proceeded to search the apartment. They found cocaine, a large amount of cash and various papers.

The legal question is whether the consent obtained to enter and search the apartment was a valid waiver of fourth amendment protections. Use of trickery or deception in gaining entry into a dwelling does not by itself necessarily violate a defendant's fourth amendment rights. *See, e.g., Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). In *Lewis*, the police officer gained entry to

defendant's dwelling by pretending to be a drug buyer; defendant was a seller. In denying suppression, the Court stressed the fact that defendant voluntarily admitted the agent to further an unlawful end and that the agent acted within the scope of the license he was granted. *Id.* at 210, 87 S.Ct. at 427.

Some courts have extended *Lewis* to cases where an undercover agent gains entry to a dwelling pursuant to some *lawful* behavior. *See, e.g., United States v. Scherer*, 673 F.2d 176 (7th Cir.), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982); *United States v. Wright*, 641 F.2d 602 (8th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981) (agent pretended to have car trouble and wanted to borrow tools).

The case at bar is distinguishable from the *Lewis* line because of the nature of the police deception. By claiming there was a possible gas leak, defendant was led to believe there was a life-threatening emergency. His decision to admit the agents was thus not "voluntary." Defendant's only "free choice" in this case was to have refused entry to the "gas company" and risk blowing up himself and his neighbors. *See People v. Jefferson*, 43 A.D.2d 112, 350 N.Y.S.2d 3 (1973) (excluded evidence in plain view where police gained entry by identifying themselves as police but claiming to be investigating a gas leak).

█ Even if the courts permit some forms of deception to gain entry to a private dwelling, there are sound public policy reasons for distinguishing the type of deception engaged in here. We take judicial notice of the suspicion with which the police, fire departments and public utilities are regarded in many poor urban communities. In order to ensure cooperation in truly life-threatening situations, it is vital to maintain the public trust in emergency services. When the police or the gas company come to the door warning of a real gas leak or other life-threatening emergency, it is in everyone's interest that they be believed. Sanctioning the type of deception engaged in here would send a message to all those with reason to fear "the system" (whether they be law abiding or law breaking) that emergency warnings cannot be trusted.

False cries of "wolf" have never been condoned by society. Residents should be habituated to assist in calls for public assistance by emergency services. Any other rule would risk serious dangers to life if people refused to open their doors or vacate the premises in case of fire, toxic fumes, gas leaks, flooding or the like.

The original entry was illegal. "Consent" was obtained by falsely inducing fear of an imminent life-threatening danger.

█ Was the subsequent written consent a valid waiver of the right to keep the police from conducting a warrantless search? In order for such consent to be effective, the government must prove not simply that the consent was granted, but also that it was independent of a prior illegal taint. The Supreme Court has established as a test

> whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975) (citing *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963)). Factors for the court to consider in determining whether the subsequent act was free of the prior illegality's aura include "the temporal proximity" of the illegal conduct and the consent, "the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct .... The voluntariness of the statement is a threshold requirement." *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975) (citations omitted).

Here written consent was not free of the taint of the deceptive entry. Only a few minutes passed between the time the agents entered illegally and written con-

sent to search was granted. There were no intervening circumstances of any kind.

Defendant's ability to effect and exercise the right to refuse consent was overwhelmed by the continuing shock of the gas emergency threat and the police presence. The particular type of deception practiced here, with its potential harm to public safety, cannot be condoned.

The scourge of narcotics has destroyed many lives. We cannot permit it also to destroy our constitutional protections. *See Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 1422, 103 L.Ed.2d 639 (1989) (Marshall, J., dissenting); *United States v. Riley,* 906 F.2d 841 (2d Cir.1990) (Weinstein, J., dissenting); *United States v. Patrick,* 899 F.2d 169 (2d Cir.1990) (Weinstein, J., dissenting).

The motion to suppress is granted.

SO ORDERED.