**Ronald L. COLEMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 97–CM–634.

District of Columbia Court of Appeals.

Argued Dec. 17, 1998.
Decided May 13, 1999.

---

Patrick J. Norman, appointed by the court, for appellant.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Mary–Patrice Brown, and John D. Crabb, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and KING, Senior Judge.

1. D.C.Code § 33–541(d) (1998).

2. D.C.Code § 33–603(a) (1998).

TERRY, Associate Judge:

Appellant was charged with possession of marijuana[1] and possession of drug paraphernalia.[2] Before trial he moved to suppress certain evidence that was seized during a search of his home. Appellant claimed that despite a concededly valid search warrant, the officers violated the Fourth Amendment and applicable knock-and-announce statutes when they entered his house by means of a ruse without first announcing their true purpose and authority. The trial court, after an evidentiary hearing, denied the motion. Following a non-jury trial, appellant was convicted of possession of marijuana and acquitted of possession of drug paraphernalia. On appeal he seeks reversal on the ground that the trial court erred in denying his motion to suppress. We hold, first of all, that an entry by ruse does not implicate the knock-and-announce statutes. Because we agree with the trial court that the entry in this case was otherwise reasonable, we affirm appellant's conviction.

I

Sometime between September 7 and September 11, 1996, Officer Edward Delgado of the Metropolitan Police obtained a warrant to search appellant's residence for a .25 caliber pistol.[3] Before executing the warrant, Officer Delgado learned that appellant's elderly, invalid mother also lived in the house. Concerned that appellant's mother might "have a heart attack or pass out or faint or get knocked out of the way" if police officers should have to enter the house forcibly, Officer Delgado proposed using a ruse to gain entry. He testified that he and other officers "decided to use a radio run approach rather than come barging into the residence like we usually do." The officers employed the ruse "for [the mother's] safety as well as ours."

In the late afternoon on September 11, Officer Chad Hambrick and another officer, both in uniform, approached the front door of appellant's house. When Officer Hambrick knocked on the front door, he could see

3. Appellant does not contest the validity of the search warrant.

appellant's mother sitting on the couch inside.[4] Through the screen door he told her that he and his fellow officer "had received a radio run to her house and that [they] wanted to make sure everything was okay." He described the call they had supposedly received as either "a burglary or burglar alarm." Appellant's mother told the officers that they could come in to "make sure everything was all right."

Once inside the house, the officers radioed to other members of the search warrant team who were waiting nearby in police cars. The other officers, including Officer Delgado, arrived within thirty seconds and secured the house. Delgado heard "somebody ... talking already about a search warrant, that they had a search warrant for the premises" when he walked through the front door.[5]

Despite a thorough search, the officers did not find any guns. However, they did recover marijuana and assorted drug paraphernalia[6] from an upstairs bedroom, where they also found mail bearing appellant's name. When they completed the search, the officers gave appellant's mother a copy of the search warrant with an inventory of all the items they had seized.

The trial judge denied appellant's motion to suppress. She found the use of the ruse reasonable because it promoted the purposes of the knock-and-announce statute. First, it decreased the potential for harm to both appellant's mother and the officers. Second, because the officers had seen a picture of appellant and had been given a description of his mother prior to the search, there was no risk that they were entering the wrong dwelling. Third, the ruse prevented any potential destruction of property. On the basis of these findings, the judge held that the entry was reasonable and thus did not violate the Fourth Amendment.

4. The officers had previously been shown a photograph of appellant and had been informed that his invalid mother also lived in the house.

5. In addition to appellant's mother, appellant and another unidentified man were also in the house.

## II

Appellant contends that the evidence seized from his home was improperly admitted because the police officers' use of a ruse to gain a peaceful entry violated the local and federal knock-and-announce statutes. According to his interpretation, the officers were required to disclose their true authority and purpose before entering the house to execute the warrant. Appellant also asserts that the entry was not reasonable under the Fourth Amendment, so that the search was unlawful despite a valid warrant.

The District of Columbia knock-and-announce statute, D.C.Code § 23–524(a) (1996), requires an officer to execute a search warrant "in accordance with section 3109 of Title 18, United States Code." The latter statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance....

18 U.S.C. § 3109 (1994). Appellant cites three of our cases in support of his argument that the officers' unannounced entry was a "breaking": *West v. United States,* 710 A.2d 866, 868 (D.C.1998); *Poole v. United States,* 630 A.2d 1109 (D.C.1993), *cert. denied,* 513 U.S. 855, 115 S.Ct. 160, 130 L.Ed.2d 98 (1994); and *Griffin v. United States,* 618 A.2d 114 (D.C.1992). Those cases, however, are distinguishable because in all of them the police officers used battering rams or similar means to break down the doors. Appellant's argument necessarily assumes that the term "break" includes a peaceful entry by means of a ruse. He argues, as have litigants in other cases, "that any entry obtained other than by the informed consent of the occupant is a 'breaking,' because it is not made with the occupant's 'valid permission.'" *State v. Myers,* 102 Wash.2d 548, 554, 689 P.2d 38, 42

6. The drug paraphernalia included an electronic scale, three crack pipes, spoons, vials, ziplock bags, and part of a syringe.

(1984). We reject that argument now, as we have in the past.

Referring to 18 U.S.C. § 3109, the Supreme Court has held that "the use of 'force'" is not "an indispensable element of the statute." *Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Nevertheless, the term "break" usually connotes some application of force.[7] *Sabbath* explained that "break," as used in section 3109, includes breaking down a door, forcing open a chain lock on a partially open door, opening a locked door by use of a pass key, or opening a closed but unlocked door, indicating that at least some force must be applied, however slight. *Id.* at 589–590 n. 5, 88 S.Ct. 1755. Consistently with *Sabbath,* "[f]ederal courts ... generally continue to hold that, where there is no force used to obtain entry, 18 U.S.C. § 3109 is not implicated, and, therefore, there is no requirement for officers to knock and announce before entry." *State v. Dixon,* 83 Hawai'i 13, 21, 924 P.2d 181, 189 (1996). Most recently, the Supreme Court has reminded us that 18 U.S.C. § 3109 "prohibits nothing. It merely authorizes officers to damage property in certain instances." *United States v. Ramirez,* 523 U.S. 65, 118 S.Ct. 992, 997, 140 L.Ed.2d 191 (1998).

The Supreme Court has not specifically decided whether an entry obtained by means of a ruse constitutes a "breaking" for purposes of the knock-and-announce statute. *See Sabbath,* 391 U.S. at 590 n. 7, 88 S.Ct. 1755. But federal and state courts interpreting both 18 U.S.C. § 3109 and similar state statutes have concluded that an entry obtained by ruse does not violate knock-and-announce requirements because it is not a "breaking" within the meaning of the statutory language. *See, e.g., United States v. Contreras–Ceballos,* 999 F.2d 432, 435 (9th Cir.1993) ("a law enforcement officer's use of a ruse to gain admittance does not implicate section 3109 because it entails no breaking"); *United States v. Raines,* 536 F.2d 796, 800 (8th Cir.) ("A police entry into a private home by invitation without force, though the

invitation be obtained by ruse, is not a breaking and does not invoke the common law requirement of prior announcement of authority and purpose, codified in § 3109"), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. DeFeis,* 530 F.2d 14, 15 (5th Cir.) ("An entry obtained without force by ruse or deception is not a violation of section 3109"), *cert. denied,* 429 U.S. 830, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Syler,* 430 F.2d 68, 70 (7th Cir.1970) (inducing defendant to unlatch and partially open door by calling out "Gas man!" did not involve force and thus did not implicate section 3109); *Dickey v. United States,* 332 F.2d 773, 778 (9th Cir.) ("the employment of a ruse to obtain the full opening of the [defendant's] door, unassociated with force, was not a 'breaking'"), *cert. denied,* 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964); *Leahy v. United States,* 272 F.2d 487, 489 (9th Cir.1959) ("Misrepresentation of identity in order to gain admittance is not a breaking with the meaning of [section 3109]"), *cert. dismissed,* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961); *State v. Dixon, supra,* 83 Hawai'i at 21, 924 P.2d at 189 ("it would be inconsistent with the plain language of the statute to interpret the use of a ruse to effect voluntary opening of the door, through which the officers enter without any use of force, as a breaking, requiring compliance with the knock and announce requirements"); *State v. Myers, supra,* 102 Wash.2d at 554, 689 P.2d at 42 (argument that "entry obtained other than by informed consent of the occupant is a 'breaking' ... is not persuasive").

This court has likewise accepted and endorsed the use of a ruse to gain peaceful entry, without requiring compliance with section 3109. In *United States v. Covington,* 385 A.2d 164 (D.C.1978), we reversed an order granting a motion to suppress evidence because the trial court had "apparently based its ruling on the proposition that the police had used the ruse for the purpose of breaking into the apartment—rather than for gain-

---

7. For example, BLACK'S LAW DICTIONARY 189 (6th ed.1990) defines "breaking" as "involv[ing the] application of some force, though the slightest force is sufficient; e.g., ... lifting a latch, draw-

ing a bolt, raising an unfastened window, or pushing open a door kept closed by its own weight...."

ing entry peacefully." *Id.* at 166. This, we stated, was "a misunderstanding of the legitimate purposes of ruses and of the law governing their use by the police." *Id.* We went on to say:

A number of courts, including this one, have approved the use of a ruse to gain peaceful entry. They have held that where the police, whether armed with a warrant or not, have employed a ruse to gain peaceful entry into a person's house, no "breaking" occurred within the meaning of [18 U.S.C. § 3109] and therefore no announcement of authority and purpose was required, prior to entry.

*Id.* at 167 (citations omitted). *See also Belton v. United States*, 647 A.2d 66, 68 (D.C. 1994) ("District of Columbia law does not regard every non-permissive police entry as a 'breaking'"), *cert. denied*, 514 U.S. 1028, 115 S.Ct. 1383, 131 L.Ed.2d 236 (1995); *(John) Jones v. United States*, 336 A.2d 535, 538 (D.C.) (no breaking occurred when police officer used a false name to gain entry to apartment), *cert. denied*, 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1975); *Matthews v. United States*, 335 A.2d 251, 254 (D.C. 1975) ("entry gained through a ruse has been held not to constitute a breaking"); *(Cecil) Jones v. United States*, 113 U.S.App. D.C. 14, 17, 304 F.2d 381, 384 (standing by while defendant opened door for janitor does not violate section 3109), *cert. denied*, 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88 (1962).

Appellant dismisses *Covington* by asserting that it "contravenes two decades of subsequent jurisprudence," including *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), and *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). However, neither *Wilson* nor *Richards* involved an entry by ruse, and in neither case did the Court even address such entries.[8] The Supreme Court in *Wilson* held that the common law principle of knock-and-announce "is an element of the reasonableness inquiry under the Fourth Amendment." 514 U.S. at 934, 115 S.Ct.

1914. Moreover, it stated that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* Instead, the Court left "to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at 936, 115 S.Ct. 1914.

In *Richards* the Court disapproved a state court ruling that police officers never have to knock and announce before executing a search warrant in a felony drug investigation. 520 U.S. at 394, 117 S.Ct. 1416. But, despite its rejection of that "blanket exception" to the knock-and-announce rule, the Court upheld the conviction, concluding that the officers' decision enter the defendant's hotel room by force was reasonable under the circumstances and thus did not violate the Fourth Amendment. *Id.* at 395, 117 S.Ct. 1416. In so ruling, the Court reiterated its holding in *Wilson* "that the Fourth Amendment incorporates the common-law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting *forcible* entry." *Id.* at 387, 117 S.Ct. 1416 (emphasis added). We find nothing in either *Wilson* or *Richards* that is contrary to what we said in *Covington.*

■■■■■ We therefore hold, following *Covington* and the cases on which it was based, as well as the numerous federal and state cases that have similarly held, that an entry obtained by means of a ruse does not constitute a breaking and thus does not implicate the knock-and-announce principles embodied in D.C.Code § 23–524 and 18 U.S.C. § 3109. It follows that the officers' use of a ruse to gain entry in this case did not violate the local and federal knock-and-announce statutes.

### III

■■■■■ But our discussion does not end there. Even though an entry does not vio-

---

8. Actually, the police entry in *Richards* began with a ruse when a plainclothes officer, posing as a maintenance man, knocked on the door. But when the occupant opened it and saw a second officer in uniform, he slammed the door shut, necessitating a forced entry. 520 U.S. at 388, 117 S.Ct. 1416. In affirming the conviction, the Court expressed no disapproval of the initial use of the ruse.

late the knock-and-announce statutes, it may nevertheless be unreasonable and hence contrary to the Fourth Amendment.' "[T]he method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or seizure." *Wilson, supra,* 514 U.S. at 934, 115 S.Ct. 1914; *accord, Ramirez, supra,* 118 S.Ct. at 996. We must therefore decide whether the entry in this case, effected by a ruse, was reasonable. The "guiding factor" in making that determination is whether the ruse "frustrates the purposes of the 'knock and announce' rule." *Myers, supra,* 102 Wash.2d at 554, 689 P.2d at 42. Those purposes, which have been recited in myriad cases, are "(1) reduction of potential violence to both occupants and police resulting from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy." *Id.; accord, e.g., Poole, supra,* 630 A.2d at 1116; *Contreras–Ceballos, supra,* 999 F.2d at 435; *United States v. Phillips,* 497 F.2d 1131, 1133 (9th Cir.1974).

■ In this case, as the trial court pointed out, the potential for violence was greatly reduced by the type of ruse employed. Appellant and the other occupants of the house all knew from the outset that it was two police officers who were entering their house, not two strangers or hostile intruders. *See Myers, supra,* 102 Wash.2d at 554, 689 P.2d at 42. Because the ruse worked, it also reduced the possible danger of harm to appellant's invalid mother that might have resulted if entry had been denied and the police had found it necessary to break down the door. In addition, the effectiveness of the ruse forestalled any destruction of property that might have resulted if force had been used.

Finally, the privacy of the occupants was maintained because the officers at the door knocked and waited to get permission to enter from appellant's mother. As the court said in *Myers:*

[S]ince an occupant cannot deny entry to police in possession of a search warrant, he loses nothing in terms of privacy when the officers fail to state their actual authority and purpose, but rather obtain permission to enter by means of a trick or ruse. The underlying purpose of protecting the privacy of the home is not threatened by ruse entries. Thus, the mere fact that a ruse has been used does not violate a defendant's right to be free from unreasonable search and seizure.

102 Wash.2d at 555, 689 P.2d at 43. "Ruse entries are invariably characterized by some degree of advance notice; the occupant is expecting an entry. The entry is consensual if the ruse works." *Id.*

Appellant contends that the ruse employed here by the officers was not reasonable because it involved the false assertion of an emergency. He argues vigorously that even if ruse entries may be generally permissible, ruse entries involving allegedly life-threatening situations are unreasonable *per se* and thus necessarily violate the Fourth Amendment. He bases this argument mainly on three cases, none of which we find persuasive.

In *United States v. Phillips, supra,* as in the present case, uniformed police officers "knocked on the door and asked permission to enter to investigate a report of burglary in the building." 497 F.2d at 1133. When the door was opened, undercover narcotics agents followed the uniformed officers inside and arrested the defendant. Although the agents had neither an arrest warrant for Phillips nor a search warrant for the premises, the Ninth Circuit held that they had probable cause to arrest Phillips and that the validity of the entry was to be "tested by criteria identical to those embodied in 18 U.S.C. § 3109." *Id.* Holding that the intrusion violated the Fourth Amendment, the court focused primarily on the agents' lack of knowledge that Phillips was inside the building.[9] However, the court also considered the type of ruse used:

9. The court did not say that ruses could never be used to gain entry into a home; on the contrary, it specifically noted that its earlier decisions in which ruses had been used to gain admission to

execute warrants were not overruled. *Phillips,* 497 F.2d at 1134. The court concluded, however, that the ruse entry was not justified in the particular circumstances of the case at hand. *Id.*

In this case, unlike [*Lewis · v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), and *United States v. Glassel*, 488 F.2d 143 (9th Cir.1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974) ], it cannot be said that the agents entered for the "very purposes contemplated by the occupant." The occupants were led to believe that they were admitting officers to investigate a burglary when, in fact, the officers and agents were entering to arrest Phillips.

497 F.2d at 1135. Although it did not expressly so hold, the court intimated that the entry by ruse violated 18 U.S.C. § 3109 because the occupants of the building admitted the officers for a purpose other than the one they contemplated, namely, to enable the officers to investigate a possible burglary. It distinguished such entries from those in which, for example, undercover agents are permitted to enter a house under the pretense of conducting a drug deal. *Id.* at 1134–1135 (citing *Lewis*, 385 U.S. at 211, 87 S.Ct. 424).

In *United States v. Bosse*, 898 F.2d 113 (9th Cir.1990), a federal agent, without identifying himself as such, accompanied a state agent on a routine inspection of the defendant's home as part of a license application process. Following the inspection, the federal agent obtained a search warrant to search the defendant's home based on information he had acquired during the inspection. Holding that the agent's entry was illegal, and that the warrant was thereby tainted, the court stated:

> Special limitations apply when a government agent obtains entry by misrepresenting the scope, nature or purpose of a government investigation. "[A]ccess gained by a government agent, known to be such by the person with whom the agent is dealing, violates the fourth amendment's bar against unreasonable searches and seizures if such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation."

*Id.* at 115 (quoting *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir.1984)). "A ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent." *Id.* (citing *Phillips* ).

Finally, in *United States v. Giraldo*, 743 F.Supp. 152 (E.D.N.Y.1990), the court held that the defendant's decision to admit narcotics agents into his home was not "voluntary" when the agents posed as employees of the gas company investigating a gas leak. After the defendant allowed them into his home, they identified themselves as federal agents. The defendant then signed a waiver of his right to prohibit the agents from conducting a search without a warrant. The court held that the waiver was invalid. It disapproved the agents' misrepresentation about a life-threatening emergency, noting that "[s]anctioning the type of deception engaged in here would send a message to all those with reason to fear 'the system' (whether they be law abiding or law breaking) that emergency warnings cannot be trusted." *Id.* at 154. "Residents," the court said, "should be habituated to assist in calls for public assistance by emergency services. Any other rule would risk serious dangers to life if people refused to open their doors or vacate the premises in case of fire, toxic fumes, gas leaks, flooding or the like." *Id.*

*Phillips, Bosse,* and *Giraldo* are distinguishable from the instant case because they all involved warrantless entries, whereas in this case the officers already had a valid search warrant based on probable cause, which gave them the authority to enter and search the house regardless of the consent or non-consent of anyone inside. This is a critical distinction. *See Myers, supra,* 102 Wash.2d at 555, 689 P.2d at 43 (warrant authorized the officers "to intrude upon the privacy of the home regardless of the occupant's wishes and irrespective of his activity at the time of the intrusion"). We also have serious doubts about whether *Phillips, Bosse,* and *Giraldo* (especially *Giraldo* ) are consistent with *Covington* and other cases, cited at page 1234, *supra,* that are binding on us. We need not resolve those doubts in this case, however, because the facts in all three of appellant's cases strike us as more extreme than the facts presented here. The ruse of checking out a burglary complaint which the officers employed to gain entrance

to appellant's home, while arguably misrepresenting a potential danger, does not rise to the level of a life-threatening situation as in *Giraldo.* Nor did the officers use the pretext of official police activity to conduct an otherwise impermissible search as in *Bosse.* While those cases raise serious concerns about officers who lie about official police action to obtain entry for other reasons, those concerns are not involved in the case at bar, in which the officers already had a valid search warrant and used a ruse simply to avoid unduly frightening or upsetting an invalid occupant of the premises to be searched.

## IV

We hold that entries effected by means of a ruse in order to execute a valid warrant are not "breakings" within the meaning of 18 U.S.C. § 3109 and D.C.Code § 23–524, and thus do not implicate the knock-and-announce requirements codified by those statutes. The officers here were not required to announce their authority and purpose before they entered the house, so long as the employment of the ruse was reasonable under the circumstances. The trial court found it reasonable, and we uphold that finding. Appellant's conviction is therefore

*Affirmed.*