**UNITED STATES of America**

**v.**

**Christobal RODRIGUEZ,
Rafael Velasquez.**

**Crim. No. 87–0105.**

United States District Court,
District of Columbia.

June 18, 1987.

Theodore A. Shmanda, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Christopher M. Davis, Washington, D.C., for defendant Christobal Rodriguez.

Mona Asiner, Washington, D.C., for defendant Rafael Velasquez.

## MEMORANDUM AND ORDER

BARRINGTON D. PARKER, Senior District Judge:

Counsel for defendant Christobal Rodriguez has moved the Court to reconsider its ruling and order entered on May 19, 1987, rejecting a challenge to the execution of the warrant to search the premises, 1368 Quincy Street, N.W. Defendant's counsel argues that the police officers who executed the search warrant violated the provisions of Title 18 U.S.C. § 3109.[1] Specifically, he contends that the police failed to wait a sufficient amount of time before forcing entry with a battering ram and that "there were no facts indicating any circumstances which would lead a reasonable [person] to conclude evidence was being disposed of or even attempts to do such." (Defendant's Motion to Reconsider at 6.)

After reviewing the memoranda and arguments presented by counsel and reflecting upon the facts of this case, this Court grants the defendant's motion and concludes that the District of Columbia police officers failed to wait until they were refused admittance as required by the "knock and announce" rule and that no exigent circumstance existed to otherwise excuse their failure to comply with the clear language of the statute.

### I.

The factual record in this case is fully set forth in this Court's May 19th opinion. Defendant Rodriguez, a suspected drug trafficker resided with his wife and baby at the Quincy Street residence. Co-defendant Rafael Velasquez (age 19) and his 17 year old brother resided in the basement of the premises with his parents, brothers and a sister. Velasquez was also a suspected drug trafficker. There were other residents in the dwelling, all related by either blood or marriage. Velasquez is a nephew of Rodriguez.

1. Section 3109 of Title 18 provides:
     The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The testimony[2] clearly shows and the parties concede that the police executing the search warrant knocked, announced themselves, and then waited only a matter of seconds before breaking open both the basement and front doors of the dwelling with a battering ram. Officer Bertie Shields testified that he knocked on the basement door and stated "Police. We have a search warrant and will execute it." He further stated that the officers on the warrant detail waited for "approximately 5 seconds" before breaking down the door. M.H. I at 33. Officer Michelle Jones offered similar testimony, that the officers entering the first floor waited "approximately 3 to 5 seconds" before knocking down the door. *Id.* at 127–28.

The two officers testified that they forcibly entered the premises to prevent the loss of evidence. Their fear was solely based on the fact that "narcotics are easily disposed of." M.H. II at 10. The officers candidly acknowledged that they heard *no* noises or suspicious sounds from within the house nor were they in any way apprehensive or fearful that the occupants were engaged in efforts to dispose of contraband or seeking to flee.

## II.

■ In executing a search warrant police are permitted to forcibly enter the premises only if "after notice of [their] authority, [they are] denied admittance." *Miller v. United States,* 357 U.S. 301, 306, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958). *See also* 1 Wharton's Crim.Proc.Supp. § 170. Section 3109 does not specify how long law enforcement officers must wait before they are constructively denied admittance and are entitled to forcibly enter the premises.[3] Our Circuit has adopted a flexible timing rule. "The time that section 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court." *United States v.*

*Davis,* 617 F.2d 677, 695 (D.C.Cir.1979) (police knocked, announced themselves and waited 15 to 30 seconds before entering, no exigent circumstances raised).

However, this Court has been unable to uncover any reported case in this or any other circuit, upholding the legitimacy of a forcible entry when the officers waited less than 10 to 20 seconds. Even in *Davis,* the police waited for a much longer period than the amount of time waited here. *See also United States v. Smith,* 520 F.2d 74 (D.C. Cir.1975) (in executing warrant for narcotics, police knocked, announced and waited *15* seconds at which time they heard suspicious sounds causing them to fear suspect was disposing of drugs and then forcibly entered premises); *Masiello v. United States,* 317 F.2d 121 (D.C.Cir.1963) (in executing a search warrant to recover gambling papers, officers knocked once without announcement, waited *10 to 20* seconds, knocked second time, announced and waited *10 to 20 more seconds,* heard rustling papers, feared evidence would be destroyed and entered). *United States v. Alatishe,* 616 F.Supp. 1406 (D.D.C.1985) (knocked once, waited *30* seconds, knocked second time and waited *15* additional seconds). Even in the case chiefly relied upon by the government, *United States v. James,* 764 F.2d 885 (D.C.Cir.1985), and upon which this Court also relied in its original decision, the police knocked and announced themselves repeatedly and then waited *30* seconds before battering down the door. Further, in most of the cases cited above where the police only waited a short time before forcibly entering the premises, they acted with haste because they heard contemporaneous sounds emanating from and/or saw activities within the premises, which created a reasonable belief that the suspects would attempt to escape, to resist or to destroy evidence. *See also United States v. Ruminer,* 786 F.2d 381, 384 (10th Cir.1986) (officers waited *5 to 10* seconds and upon seeing suspect leaving room,

---

**2.** Reference to the testimony at the Motion Hearing conducted on April 24 and 27, 1987 is identified herein as M.H. I and M.H. II.

**3.** The case law is clear that refused admittance need not be an affirmative act; it can be constructive or implied, *Masiello v. United States,* 317 F.2d 121, 122 (D.C.Cir.1963).

feared he would destroy evidence and then forcibly secured entrance to the premises).

### A.

Those few seconds that the officers waited before resorting to the battering ram, afforded little if any time for any occupant to hear and respond to a knock, let alone to make it to the door. The warrant in this instance was served at 6:30 o'clock in the morning, a time when the occupants were in bed, still sleeping. In fact, the search warrant officers found all the basement occupants of the premises, including the co-defendant, his brother, sister and parents, still dressed in their pajamas. The co-defendant Velasquez, along with a younger brother, were found in bed in their bedroom. Given the important purposes behind 3109 to protect "the precious interest of privacy as summed up in the ancient adage that a [person's] house is his castle" *Miller v. United States,* 357 U.S. at 307, 78 S.Ct. at 1194, this Court concludes that 3 to 5 seconds is insufficient time to constitute "refused admittance" under the statute.

■ Courts have waived the requirements of the "knock and announce rule" if the police can demonstrate that exigent circumstances necessitate rapid entry. These circumstances include a reasonable belief that the evidence will be imminently destroyed. *United States v. James, supra; United States v. Smith,* 520 F.2d 74 (D.C. Cir.1975); *United States v. Hubbard,* 493 F.Supp. 209 (D.D.C.1979), *aff'd, United States v. Heldt,* 668 F.2d 1239 (1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). *See also,* Annotation, *What Constitutes Violation of 18 U.S.C. 3109 Requiring Federal Officer to Give Notice of His Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant,* 21 A.L.R.Fed. 820. In every case in which the courts have invoked the exigent circumstance exception, the police have testified that they had some specific and immediately ascertainable reason for fearing the loss of the desired evidence. In narcotics cases, the police generally testify to hearing some suspicious noises on the

other side of the door which created a reasonable belief that the inhabitants were destroying the contraband. *See Masiello* and *Smith, supra.* In the government's main authority, *James,* the police heard someone running down the back stairs after they knocked and announced themselves. Our Circuit concluded that "a reasonable interpretation of such sounds is that the inhabitants are well aware of the purpose of the police visit and are moving to destroy evidence." *Id.* at 888.

Several state courts have ruled that, in the absence of any specific basis for fearing the loss of evidence, officers' forced entry within 3 to 5 seconds of announcing their notice and purpose violated their respective state's "knock and announce" rule. *Tatman v. State,* 320 A.2d 750 (S.Ct.Del. 1974) (forced entry within 5 seconds of knock at 6:00 a.m. insufficient time to constitute refused admittance); *State v. Bates,* 120 Ariz. 561, 587 P.2d 747 (1978) (3 to 5 seconds insufficient to demonstrate constructive refusal of admittance). In *Bates,* which also concerned a search warrant for narcotics, the Arizona court *en banc* concluded that:

> The mere fact that this search warrant was executed for the purpose of discovering narcotics does not necessarily create an exigent circumstance justifying immediate entry.... [S]tanding by itself, the easy destructibility of narcotics evidence is insufficient to provide reasonable cause for officers to believe that announcement of the purpose of their entry would frustrate the search.... There must be 'substantial evidence' to cause the police to believe evidence would be destroyed.

*Id.* at 749.

Similarly, in *Tatman,* which concerned a search warrant for narcotics executed at 6:00 in the morning, the Delaware court stated:

> There was no foundation to support a *good faith belief* on the part of the police officers that full and complete compliance with the rule would have increased their peril, frustrated the arrest, or per-

mitted destruction of evidence. (emphasis added)

*Tatman* at 751.

 Here, the police officers failed to offer any reasons which caused them to have a basis, let alone a reasonable basis for fearing that any person, including these defendants, were likely to destroy the evidence. They admitted that they did not hear any noises emanating from the other side of the door. The officer who participated in the execution of the search warrant and also testified at the motions hearing stated that she stood right next to the door and "didn't hear anything." M.H. II at 10. Their entire basis for fearing a loss of evidence rested on the general observation that "narcotics are easily disposed of." M.H. II at 10. It must also be pointed out that the two officers who testified, Bertie Shields and Michelle Jones, were officers each with five years prior experience.

### B.

Though consideration of the disposability of the evidence may provide a starting point for justifying a forcible entry, it is no more than a starting point. Without more specific signals indicating that these suspects may be preparing to destroy evidence, law enforcement officers cannot rely on the disposability factor alone to authorize a forcible entry such as employed in this situation. Otherwise this rule of "easy disposability" would warrant forcible entries into the homes of private citizens whenever the police execute a search warrant for narcotics (or for that matter any other contraband which is susceptible to easy destruction). Such an expansive rule would effectively reduce the standard for showing exigent circumstances to that of probable cause. Once a police officer possessed a search warrant, she would have a green light to batter down the suspect's door. Such a rule would render Section 3109 into a nullity and result in needless destruction of private property.

In reconsidering and setting aside the earlier decision of May 19, 1987, this Court heeds the well considered words of Mr. Justice Brennan:

The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.

*Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958).

The important principles protected by the statute would be severely undermined if the officers' actions were sustained, based solely on their observation and later testimony elicited at the motions hearing—that narcotics are easily disposable. That consideration alone is insufficient to demonstrate exigent circumstances authorizing a forcible entry by the police.

### C.

On basis of the above, the original order of May 19, 1987 denying the motion of the defendant to suppress evidence is vacated and set aside. The defendant's motion for reconsideration is granted and all evidence and contraband recovered by the District of Columbia police pursuant to the search warrant executed on February 26, 1987, is suppressed and shall not be relied upon in the prosecution of this proceeding. Since entry to each door of the premises, 1368 Quincy Street, N.W., was secured in the same manner, this ruling shall apply to all evidence and contraband seized.