**Bernard CULP, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–555.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1992.

Decided May 4, 1993.

Peter N. Mann, Ashton, MD, for appellant.

Larry J. Gusman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, and Robert A. Feitel, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, and KING, Associate Judges.

KING, Associate Judge:

Appellant was convicted of two counts of armed robbery, D.C.Code §§ 22-2901, -3202 (1989), and one count of possession of a firearm during a crime of violence or dangerous offense, D.C.Code § 22-3204(b) (1989). Appellant argues on appeal that certain tangible evidence, including an imitation Uzi machine gun, should have been suppressed because it was seized during a search that violated the District of Columbia's "knock and announce" statute, D.C.Code § 23-524(a) (1989).[1] In denying appellant's motion to suppress, the trial judge found that the police action was justified by exigent circumstances. We affirm.

## I.

On November 26, 1990, at approximately 8:00 p.m., a man entered the Trak Auto store located at 318 Riggs Road, N.E., wearing a mask and carrying a Tropicana juice box. He walked to the parts counter, pulled an Uzi style machine gun[2] out of the box and ordered the store manager, who was servicing a customer, to open the store safe. After the manager gave the gunman $508 from the safe, another store employee was ordered to turn over $338 cash from the cash register. The assailant then backed out of the store holding the employee, as a human shield, at gunpoint. As he reached the door the gunman took off his mask, pushed the employee away, and fled the store.

Store employees identified the appellant as the gunman from a photo array. It was then ascertained that the appellant resided at 611 Keefer Place, N.W. In addition, the police learned from an informant, who had personally observed the weapon, that the Uzi was present inside of the premises within the 24 hours preceding the search warrant application and that appellant had spoken of "doing a robbery." Finally, appellant fit the description of the perpetrator of approximately eleven other robberies, all within the six weeks preceding the search, involving the use of an automatic weapon similar to the one used in the Trak Auto robbery.[3] Based on this information, the police requested a search warrant for the Keefer Place premises. Because of the nature of the weapon, and its repeated recent use by appellant, a nighttime warrant was sought and approved by the authorizing judge, because it was believed that, under the circumstances, a search at night would be less dangerous.

The Special Operations Division's Emergency Response Team ("ERT") was requested to execute the warrant based on the potential for violence. When the ERT arrived at the appellant's residence at 8:00 p.m. on December 4, 1990, approximately eight days after the Trak Auto robbery, they saw lights and heard voices coming from inside the home. Officer Grooms

---

1. In their briefs, both appellant and the government relied on the "knock and announce" provision set forth in D.C.Code § 33-565(g) (1988). That provision, however, is only applicable to search warrants for controlled substances. The statute which governs the search in question here, D.C.Code § 23-524, incorporates section 3109 of title 18 of the United States Code which provides:

   The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1991). This language is nearly identical to that of D.C.Code § 33-565(g), which differs only in that it does not include the language after the word "admittance."

2. According to a police witness, an Uzi machine gun carries "at least 32 rounds of ammunition ... which [are] fired ... at rapid velocity" (sic).

3. The police documented the similarities in the descriptions of the perpetrator(s) of all twelve crimes in a "flow chart" attached to the affidavit in support of the nighttime search warrant. Our own examination of these descriptions persuades us that the police had reasonable grounds for suspecting that appellant had committed all or most of them.

knocked on the door three times with his shield and announced, "Police, search warrant." The talking stopped and thereafter there was no acknowledgement of the knock, sound of movement toward the door, or scuffling inside the home. After five seconds the police used a battering ram to force open the door. The police waited only five seconds because they feared that "any other delay would have possibly allowed someone inside to arm themself with this weapon." The officers arrested the appellant and discovered an imitation Uzi machine gun in the rafters of the basement ceiling where the informant had reported seeing it.[4]

Prior to trial, appellant, moving to suppress tangible evidence seized from the house in which he was arrested, challenged the search on three separate grounds: (1) that the search warrant was not supported by probable cause, (2) that the warrant was executed at nighttime but did not comply with the requirements of a nighttime search warrant, and (3) that the officers violated the knock and announce requirements of the D.C.Code. The motions judge rejected each claim and denied the motion. The judge found that exigent circumstances justified the forced entry after the passage of only five seconds because the nature of the weapon posed "a serious risk of injury to the police or other citizens...."

On appeal, the only claim presented is that the motions judge erred in concluding that the officers' entrance did not violate the knock and announce requirements.

## II.

▉ It is well established that the "police may not forcibly enter a person's house without prior announcement." *Williams v. United States,* 576 A.2d 700, 703 (D.C. 1990) (citing *Miller v. United States,* 357 U.S. 301, 306–08, 78 S.Ct. 1190, 1194–95, 2 L.Ed.2d 1332 (1958) ("From the earliest days, the common law drastically limited the authority of law officers to break the door of a house to effect an arrest.")). When executing a search warrant at a residence, the police must knock and notify the occupants of the police authority to search the home, D.C.Code § 23–524(a) (incorporating 18 U.S.C. § 3109). This court's interpretation of the knock and announce provision in § 33–565(g), which is virtually identical to its federal counterpart, 18 U.S.C. § 3109, and federal circuit courts interpreting that provision, have recognized two broad exceptions to the knock and announce requirement. The first exception allows police to enter without delay if the police can reasonably infer from the actions or inactions of the occupants that they have been refused admittance.[5] *United States v. Covington,* 385 A.2d 164, 168 (D.C.1978). The second exception allows police to enter if they are confronted with exigent circumstances, such as the imminent destruction of evidence or danger to the entering officer. *Williams v. United States, supra,* 576 A.2d at 703.

Our review of appellant's challenge to the trial court's determination that exigent circumstances justified the police intrusion must afford the government "all legitimate inferences from the testimony and uncontroverted facts of record," *United States v. Covington, supra,* 385 A.2d at 166 (quoting *Jenkins v. United States,* 284 A.2d 460, 462 (D.C.1971)), if those inferences are

---

**4.** Although the gun was a plastic imitation of an Uzi submachine gun, Detective Steven Mann testified that visually it was identical to a real weapon. Mann testified that the only difference is that a real gun is heavier. We agree with the trial judge who observed:

> Just as it is inappropriate to use things that were discovered after the search to justify the basis for the search in the first place, it is also inappropriate to use things that were discovered after the search to invalidate a search that was otherwise proper at its inception. And, therefore, it is not proper for a review-

ing court to consider the fact that the Uzi turned out to be a toy gun or that the people in the premises were not, in fact, armed with any weapons when they finally got inside.

**5.** The trial judge also found that the entry after only a five second delay was supported by the constructive refusal of the occupants to open the door. Since we hold that the entry was supported by exigent circumstances, we do not address the constructive refusal finding by the trial judge.

"supportable under any reasonable view of the evidence." *Ibid.* (quoting *Scarbeck v. United States,* 115 U.S.App.D.C. 135, 155, 317 F.2d 546, 562, *cert. denied,* 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963)).

■ In the present case, the issue before the motions judge in determining exigency was whether the evidence satisfied an "objective test ... which calls for a ... *judicial* evaluation whether those circumstances support a legal conclusion of ... exigent circumstances...." *United States v. Bonner,* 277 U.S.App.D.C. 271, 278, 874 F.2d 822, 829 (1989). The test is how a reasonable and experienced officer would respond under these circumstances. *See Williams v. United States, supra,* 576 A.2d at 704 (citing *United States v. Bonner,* 277 U.S.App.D.C. at 278, 874 F.2d at 829). Applying these principles, the trial judge found that:

> these officers were acting reasonabl[y] in concluding after a very short passage of time that there was an exigent need to enter those premises by force immediate[ly] in order to avoid ... what was believed to be a serious risk of injury to the police or other citizens in the execution of that warrant.

The trial judge noted five factors that taken together justified the officers' determination that exigent circumstances necessitated their forced entry. First, the police were executing a warrant that had grown out of an investigation for at least twelve armed robberies in which the perpetrator used a weapon described as an Uzi type machine gun. Appellant had been linked to all of those robberies by identification evidence of one kind or another. Second, the information that the appellant was using drugs increased police concern about executing the warrant. Third, the ERT had reviewed the application and "made its own independent judgment that it was an appropriate warrant for them to execute because of the danger to citizens and law enforcement personnel ... reasonably posed by appellant in those premises and the weapons accessible to him." Fourth, if appellant believed the police were there for him, he might act in a desperate way to avoid apprehension and use the weapon that was at his disposal or the weapon police believed was at his disposal. Fifth, and according to the trial court the most significant reason, "this wasn't just any kind of weapon, it was an automatic or at least semiautomatic machine gun type weapon which was capable of inflicting tremendous damage in a very short period of time before the officers could adequately defend themselves." The trial judge concluded that there was danger to the officers, stating:

> while there is not the kind of scurrying through the house which the officers could conclude was an attempt to destroy evidence or obtain weapons that other cases have pointed to as exigent circumstances justifying an immediate entry, for all the police knew Mr. Culp didn't have to scurry anywhere to get his Uzi weapon because it was immediately available to him....

We have recognized that the purpose of the knock and announce statute is to protect and encourage police safety. *Williams v. United States, supra,* 576 A.2d at 706. In *Williams,* however, we also recognized that there are circumstances "where the police officers' safety is better protected by immediate forced entry, than by rigid adherence to the knock and announce requirement." *Id.* Our review of the record persuades us that the trial judge did not err in concluding that exigent circumstances justified the police action taken here.

■ It is clear from the record that when the ERT arrived at appellant's residence they knew that he was suspected of committing as many as twelve robberies, each using an Uzi type weapon. They also knew that appellant had used the weapon to take a human shield to ensure safe escape after committing the latest robbery and in one previous robbery had "racked the action," i.e., moved bolts on top of the gun in a threatening manner. The ERT had also learned, from a person who had seen the weapon, that the Uzi had been seen on the Keefer Street premises within the past twenty-four hours and appellant

spoke of "doing a robbery."[6] Moreover, they were aware that appellant had a record for violence and PCP use, and they had been informed that appellant was using drugs at the time. *See Coates v. United States*, 558 A.2d 1148, 1151 (D.C.1989) ("[PCP] users may act in a very violent and irrational way following use of the drug"). When the ERT arrived at the premises, they saw lights and heard voices inside the home. Their knock and announcement of their authority and purpose was met with silence.[7] The motions judge found that the police were reasonable in concluding that there was serious risk of injury in any further delay. We agree and hold that the trial judge's conclusion was supported by ample evidence and find no basis for disturbing it. *See Covington, supra*, 385 A.2d at 166.

For the reasons stated, we find that the police action was warranted under these circumstances and the trial court properly denied the appellant's motion to suppress the evidence.

Accordingly, the judgment is

*Affirmed.*

ROGERS, Chief Judge, concurring:

I concur in the result reached by the majority in this case, and I write separately because of the importance of using the proper analysis to reach that result. Here, the exigency turns not simply on the possession of a Uzi by a suspected armed robber, but on the fact that the police made a reasonable effort under the circumstances to comply with the statutory requirement that they knock and announce

before forcibly entering appellant's home. With knowledge of appellant's past aggressive use of the Uzi, the trial judge could properly find that the police could reasonably conclude that waiting longer than five seconds after announcing their presence and purpose would endanger their safety.

The Supreme Court has long recognized that the historical roots of the privacy interests in one's home compel judicial restraint in carving out exceptions to the knock and announce requirements. Thus, in *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958), the Court stated that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given a grudging application." *See Sabbath v. United States*, 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1986) (same). Following the federal courts' interpretation of the federal statute, which is identical to the District of Columbia knock and announce statute, this court has recognized two broad exceptions to full compliance with the requirements of the statute. The first exception is based on the avoidance of mere ritual, where constructive refusal to permit entry can be reasonably inferred by the police from the action or inaction of the occupants, and the second exception arises from the exigencies of law enforcement, permitting the police to enter forcibly "without fully complying with the knock and announce statute" in order to avoid the imminent destruction of evidence or some danger to the entering

---

**6.** The search warrant was executed eight days after the Trak Auto robbery in which the assailant had used an automatic weapon. We do not believe that this lapse of time diminishes the exigency since the police had very fresh information that the Uzi was seen on the premises.

**7.** Nor is it without significance that the police indisputably knocked and announced their authority and purpose, meeting one of the requirements of 18 U.S.C. § 3109. In *United States v. Bonner, supra*, in which the police had similarly announced their authority and purpose, and the issue was whether exigent circumstances justified their hasty entry, the court explained:

Whether the exigency is sufficient to justify the officers' challenged behavior turns upon

the *extent and nature of the departure that must be justified.* The exigency required to justify a warrantless search differs from that required to excuse noncompliance with section 3109's announcement provision. *That degree of exigency is, in turn, greater than that needed to excuse noncompliance with only the refusal portion of section 3109.*

277 U.S.App.D.C. at 275, 874 F.2d at 826 (emphasis added). At least where a crime of violence is the subject of the search warrant, as here, we agree that the extent of departure from the statute's commands is relevant to the showing of exigency required.

officers. *Williams v. United States,* 576 A.2d 700, 703 (D.C.1990) (citations omitted).

The government's burden to show the nature of the exigency increases, however, to the extent that the police fail to comply with the knock and announce statute. *See United States v. Bonner,* 277 U.S.App.D.C. 271, 275, 874 F.2d 822, 826 (1989) (citing *United States v. Harris,* 140 U.S.App.D.C. 270, 435 F.2d 74 (1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); *Masiello v. United States,* 115 U.S.App.D.C. 57, 317 F.2d 121 (1963); *accord, United States v. Bustamante–Gamez* 488 F.2d 4, 11–12 (9th Cir.), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974)). Hence, a critical fact in the instant case is that the officers knocked and announced their identity and waited five seconds before forcing their entry into appellant's home. Otherwise, the majority opinion could be misconstrued to stand for the proposition that whenever a semi-automatic firearm is involved, the police have exigent circumstances permitting a forced entry into a criminal suspect's home without reference to the knock and announce requirements. *See* majority opinion at 463; *see also id.* 464 at n. 7. But that is not the law.

The decision of the United States Court of Appeals for the District of Columbia Circuit in *Bonner, supra,* 277 U.S.App.D.C. 271, 874 F.2d 822, is instructive.[1] The court held, alternatively, that exigent circumstances justified the officers' forced entry after eleven to twelve seconds. *Id.* at 275, 874 F.2d at 825. The court explained that "[t]he exigency required to justify a warrantless search differs from that required to excuse non-compliance with sec-

tion 3109's announcement provision. That degree of exigency is, in turn, greater than that needed to excuse noncompliance with only the refusal portion of section 3109." *Id.* at 275 & n. 4, 874 F.2d at 825 & n. 4 ("near-complete compliance with section 3109 requires less exigency to justify entrance than does entry absent notice"). Noting that "[a] broad range of exigent circumstances has been found to justify less than full compliance with the various requirements of section 3109," the court observed that the danger to the police "increased once the officers identified themselves and waited before the door, forced to interpret the import of the sounds within." *Id.* at 275–76, 874 F.2d at 825–26.[2] The court concluded, further, that the departure from the statutory requirements was "exceedingly slight," since by knocking on two occasions and giving notice of his authority and purpose, the police officer had "thereby satisfied the principal values embodied in section 3109." *Id.* at 276, 874 F.2d at 826 (citing *Sabbath, supra,* 391 U.S. at 589, 88 S.Ct. at 1758). Finally, the court noted that by obtaining a search warrant the officers had "eliminat[ed] that element of the exigency requirement designed to ensure that the Fourth Amendment's Warrant Clause is not eroded by an exigency too quickly perceived by those called upon to serve on the firing line." *Id.* 277 U.S.App.D.C. at 278, 874 F.2d at 828.

The trial judge in the instant case found that the police officers could reasonably conclude that they had been refused admittance. The judge reached this conclusion, however, as appellant points out, without meaningful review of whether the officers complied with the knock and announce stat-

---

1. In that case, the police knocked and announced three times, on two separate occasions, and upon hearing footsteps running from the apartment, where cocaine was suspected of being sold, they used a battering ram to force open the door after a total of eleven to twelve seconds had passed. *Id.* at 272, 275, 874 F.2d at 822, 825. The court noted that "a few additional seconds' delay clearly would have supported the conclusion that the officers had been refused admittance." *Id.* at 276, 874 F.2d at 826. Nevertheless, the court concluded, on the basis of the five circumstances, that the officers had reasonably concluded they had been refused

admittance. *Id.,* 874 F.2d at 825. *See United States v. DeLutis,* 722 F.2d 902, 909 (1st Cir. 1983) (upholding forced entry after 20 seconds delay) (and cases surveyed).

2. *See generally,* Marvin Owen Meier, Annotation, *What Constitutes Violation of 18 USC § 3109 Requiring Federal Officer to Give Notice of his Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant,* 21 A.L.R. Fed. 820, 856–61 (1974).

ute. Contrary to the trial judge's view,[3] the courts must carefully scrutinize the circumstances underlying a claim of a statutory violation precisely because what is at risk is the individual's right of privacy in his or her home as well as danger to private citizens and the police as a result of a forced entry. As was pointed out in *Masiello, supra,* 115 U.S.App.D.C. at 59, 317 F.2d at 123 (after remand to trial court for findings on alleged statutory violation, where officers waited two periods of 10 to 20 seconds before forcing entry), "close cases such as this will always receive careful appellate scrutiny. It is very desirable as an aid to appellate review that the facts concerning the required preliminary steps to entry should be developed and the factors relied on by the prosecution should appear in the record and be the subject of findings." *See Griffin v. United States,* 618 A.2d 114 (D.C.1992) ("where basic constitutional liberties are implicated, a more searching standard of review may be warranted") (citing *Ker v. California,* 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963); *United States v. Rodriguez,* 663 F.Supp. 585, 588 (D.C.1987) ("Given the important purposes behind 3109 to protect 'the precious interest of privacy as summed up in the ancient adage that a [person's] house is his castle'[,] *Miller v. United States,* 357 U.S. at 307 [78 S.Ct. at 1194] ..., this Court concludes that 3 to 5 seconds is insufficient time to constitute 'refused admittance' under the statute"; 6:30 a.m.)); *see also United States v. Davis,* 199 U.S.App.D.C. 95, 113, 617 F.2d 677, 695 (1979) ("[t]he time that [the statute] requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court"; wait of 15 to 30 seconds before forced entry into house with lights on); *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980) *United States v. (Louis) Smith,* 171 U.S.App.D.C. 342, 520 F.2d 74 (1975) (after

remand for findings, 524 F.2d 1287, upheld forced entry after announcement when exigent circumstances created by noises inside the apartment suggested destruction or concealment of evidence).

The majority does not address the trial judge's finding of refusal of admittance because it concludes that the presence of the Uzi created exigent circumstances. *See* majority opinion at 462 n. 5 and 463. Nevertheless, the trial judge's finding— that after five seconds followed by silence the police could reasonably conclude that they had been denied admittance—cannot be sustained on the record before us: five seconds would not generally afford the occupants sufficient time to open the door voluntarily. *See, e.g., Masiello, supra,* 115 U.S.App.D.C. at 58, 317 F.2d at 122 (refused admittance not restricted to affirmative refusal); *United States v. James,* 528 F.2d 999, 1017 (5th Cir.1976) ("[f]ailure to respond within a reasonable time was tantamount to a refusal"; after 80 seconds and two announcements for the occupants to exit the house, police fired tear gas into the house); *see also Griffin, supra,* 618 A.2d at 122 (no authority cited in which delay of only 30 seconds in early morning hours sufficient in absence of some suspicious activity following arrival of police, or some other equivalent circumstance); *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795, 798 (Pa.1968) (20 seconds delay in answering door not refused admittance). In view of the evidence that the conversation of persons within the house stopped after the police knocked and announced, it was for the trial court to make findings on whether or not the occupants could have called out in response to the knock in so brief a time or whether they could only have been able to internalize the fact that someone was at the door. In the absence of any findings by the trial judge, the record here, as in *Williams,* does not support the conclusions that the police had waited long enough to decide that there was a

---

3. The trial judge stated:
   I would conclude that it is inappropriate for me as the reviewing judge to second guess by a matter of a split second here or there whether five seconds was sufficient or the police should have instead waited six seconds or ten seconds before reasonably concluding that they were not going to be allowed in. And in my judgment those distinctions are simply too fine to be made.

constructive refusal to admit them. Silence for five seconds is not the same as evidence that people were moving with the possibility of escaping or obtaining the means to endanger the entering police officers.[4]

Hence, the question is whether the government has met its burden to show exigent circumstances. The instant case involves the presence of an automatic weapon which the police were informed was kept in the rafters in the basement of the house. However, there was nothing to suggest to the police that their presence had been detected by the persons inside the house before the police announced their presence by knocking on the front door. *See, e.g., United States v. Spinelli,* 848 F.2d 26, 29–30 (2d Cir.1988). The quick police entry was also not based on a concern about the destruction of evidence. *See, e.g., United States v. Nabors,* 901 F.2d 1351 (6th Cir.1990); *United States v. Barrientos,* 758 F.2d 1152 (7th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986). Nor was there information that an armed guard would be sitting by the front window, or that more than one gun was inside the house much less that there was any illegal activity going on in the house. *See, e.g., Williams, supra,* 576 A.2d 700. After the police knocked, moreover, they did not hear any noise in response to their knock; rather, there was silence during the five seconds before the police forced their entry. Thus, as appellant points out, the finding of exigency was unsupported by facts providing a reasonable belief that the occupants of the house were attempting to destroy evidence or resisting apprehension. In that sense, the exigency found by the trial judge here is less than the exigency found in *Williams, supra* 576 A.2d 700, and the

extent of the departure from the statutory requirements is greater since the police only knocked and announced on one occasion and then waited only five seconds.

The trial judge recognized that the presence of the Uzi inside the house was not by itself sufficient to create exigent circumstances without regard to the knock and announce requirements of the statute. The judge found that:

> [the] officers did knock, did announce their authority and purpose in a way that was reasonably calculated for the people inside to hear it and to understand their purpose there. And the exigent circumstances presented at that moment therefore justified ... the immediate entry after the passage of only five seconds even if the passage of five seconds was not sufficient for them to have concluded that their entry was being denied.... And in my judgment these officers were acting reasonable [sic] in concluding after a very short passage of time that there was an exigent need to enter those premises by force immediate [sic] in order to avoid ... what was believed to be a serious risk of injury to the police or other citizens in the execution of the warrant.

Clearly, knowledge of the presence of an Uzi machine gun in the basement rafters did not suffice to give the police grounds to break into appellant's home. *See Nabors, supra,* 901 F.2d at 1354 (although circumstances of a felon drug trafficker in possession of array of firearms who habitually wore a bulletproof vest, showed threat to police and others' safety, and the need to conserve narcotics evidence justified forced entry moments after knocking and announcing, "[w]e do not hold ... that every time law enforcement personnel suspect that the subject of a search warrant pos-

---

4. *See, e.g., Rodriguez, supra,* 663 F.Supp. at 587 (forcible entry 3 to 5 seconds after knock and announce where police heard sounds from within creating reasonable belief that suspects would attempt to escape, resist, or destroy evidence); *United States v. Ruminer,* 786 F.2d 381 (10th Cir.1986) (entry 5 to 10 seconds after knock and announce where police saw figure leaving room); *United States v. Wysong,* 528 F.2d 345 (9th Cir.1976) (entry into motel room 5 to 10 seconds after knock and announce after observing illegal drug sale in motel room); *McClure v. United States,* 332 F.2d 19 (9th Cir.) (entry 4 to 5 seconds after knock and announce where police were seen approaching house and heard footsteps after knocking and announcing and feared escape of defendant), *cert. denied,* 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965).

sesses a firearm, a split-second announcement followed by a forced entry sufficiently complies with 18 U.S.C. § 3109"). The police had no information that the Uzi had ever been seen anywhere inside the house other than in the rafters in the basement. Nor is it the type of weapon that a person would carry on his or her person, like a pistol. That there was no response whatsoever to the knock at the door says almost nothing relevant in regard to exigent circumstances; the police did not hear anyone running and scurrying or any other sound, and the silence was not inconsistent with the occupants being startled or unable to respond to the front door so quickly. The trial judge's findings in evaluating the effect of this silence on the overall circumstances was limited to finding that as a result of their knocking and announcing, "the officers were ... entirely reasonable in concluding that the people inside were then aware that the people outside were police officers there to execute a search warrant."

Nevertheless, in view of the heightened capacity of an Uzi to inflict lethal injury, *see* majority opinion at 461 n. 2, the police had reason to be particularly concerned that they enter before anyone inside had an opportunity to inflict serious injury on officers or others. Fear of violence had caused the police to use the Emergency Response Team and to seek a nighttime warrant. The members of the Emergency Response Team thought that the Uzi was real, not an imitation. While the five second delay was insufficient to constitute a constructive refusal of entry, the police could reasonably conclude that the fact that they had knocked and announced their presence and purpose heightened a potentially dangerous situation. *See Bonner, supra,* 277 U.S.App.D.C. at 275–76, 874 F.2d at 825–26. The lights were on in the house and the police had heard people talking in the house. The information that a Uzi was in the house was only twenty-four hours old and the police had reason to

believe that appellant contemplated committing another armed robbery, and thus was likely still to have the Uzi in his home. The police also had reason to believe that appellant had used a human hostage during a prior robbery with the Uzi. Contrary to appellant's contention, the police were not simply acting on a mere "generalized belief" that the Uzi might be immediately available to appellant if they waited longer before entering the home. As the majority points out, *see* majority opinion at 463, *supra,* the trial judge relied on five circumstances as supporting a finding of exigent circumstances, including that the police had information that appellant made personal use of illegal drugs.

Under all of the circumstances, therefore, and consistent with our standard of review,[5] this court is constrained to conclude that there was reasonable compliance with the knock and announce requirements of the statute in light of the exigent circumstances created thereafter. *Cf. State v. Jeter,* 30 Wash.App. 360, 634 P.2d 312, 314 (1981) ("a concern for police safety must be based upon prior knowledge or direct observation that the subject of the search keeps weapons *and* that such person has a known propensity to use them"); *United States v. Cruz,* 265 F.Supp. 15, 24 (W.D.Tex.1967) (upholding entry 15 seconds after knock and announce where police heard sounds and defendant "was dangerous man who always had a deadly weapon available in his residence" in view of apprehension of police that they might encounter a shoot-out); *compare People v. Dumas,* 9 Cal.3d 871, 109 Cal.Rptr. 304, 308, 512 P.2d 1208, 1212 (1973) (defendant known to answer door armed with a gun). Accordingly, I concur in the affirmance of the judgment.

---

5. *See Williams, supra,* 576 A.2d at 703 ("afford[ing] the government 'all legitimate inferences from the testimony and uncontroverted facts of record' and 'accept[ing] the inferences drawn by the trial court as to the facts before it, if they are supportable under any view of the evidence' ") (citations omitted).