### Byron MOORE, Appellant,

v.

### UNITED STATES, Appellee.

No. 97–CM–1578.

District of Columbia Court of Appeals.

Argued Dec. 14, 1999.

Decided Feb. 17, 2000.

Janice Washington, Public Defender Service, with whom James Klein and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Stephen R. Martin, II, Assistant United States Attorney, with whom, Wilma A. Lewis, United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

After the trial judge denied Byron Moore's pretrial motion to suppress physical evidence, Moore waived a jury trial, and was convicted of carrying a pistol without a license,[1] possession of an unregistered firearm,[2] and unregistered ammunition.[3] Moore filed a timely appeal to this court and argues that the decision of the police officers to forcibly enter the apartment he occupied was not justified by exigent circumstances, and violated the "knock and announce" statute, D.C.Code § 33–565(g) (1998), and the Fourth Amendment. Although this is admittedly a close case, we disagree and affirm.

## I.  FACTUAL SUMMARY

Metropolitan Police Department Officer Christopher J. Thornton obtained a search warrant for weapons at 5400 First Place, N.W., Apartment 2. Officer Thornton had been notified by an informant that large amounts of cannabis were being sold out of an apartment on First Place in northwest Washington, D.C., and that three men in the apartment carried 9 MM guns in their

1.  D.C.Code § 22–3206 (1996 Repl.).

2.  D.C.Code § 6–2311.

3.  D.C.Code § 6–2361.

waistbands in the event someone attempted to rob them. Based on the foregoing information, Officer Christopher Thornton considered the warrant "a high risk search warrant" and informed Officer Sergeant Michael L. Russell that a Special Operations Emergency Response Team ("ERT") would be necessary to execute the warrant. Officer Thornton informed Sgt. Russell that he might encounter three individuals in the apartment with 9 MM weapons.

Sgt. Russell, after surveying the location, became concerned about receiving gunfire, without cover, from a front window in the apartment. He was also concerned that there was no "invisible approach" to the front door of the apartment, and that the apartment door was wooden and thus "not very good at stopping bullets," if while executing the search warrant the individuals inside decided to fire upon the police.

On August 1, 1995, at approximately 11:00 a.m., the ERT team, consisting of thirteen members, six to surround the building and seven to make the entry, executed the warrant. Using a passkey from the Postal Service, the ERT team entered the building without difficulty. The trial judge credited Sgt. Russell's testimony that, once in the building, he loudly knocked on the apartment door and announced in a loud voice, "Police. Search warrant. Open the door." After announcing his presence, Sgt. Russell heard nothing. He waited six to seven seconds and then instructed two officers to ram down the door to the apartment, as he was concerned that the officers were "crammed in a small area" and exposed to possible gunfire because they were directly outside the apartment door. After forcibly entering and securing the apartment, the officers followed Moore to a bedroom closet, where he dropped a .357 caliber revolver, and then surrendered to the police.

## II. STANDARD OF REVIEW

The issue of whether there were exigent circumstances to permit the officers'

forced entry into the apartment occupied by Moore is a mixed question of law and fact. *West v. United States*, 710 A.2d 866, 868 (D.C.1998) (citing *Griffin v. United States*, 618 A.2d 114, 117 (D.C.1992)). Although, the factual findings of the judge cannot be disturbed unless they are clearly erroneous, the judge's legal conclusions are reviewed *de novo*. *Id.* "Because basic constitutional liberties are implicated, we apply the more searching *de novo* standard." *Id.* (citing *Poole v. United States*, 630 A.2d 1109, 1117 (D.C.1993)) (footnotes omitted).

## III. ANALYSIS

The requirement that the police knock and announce their presence before entering an individual's home to execute a search warrant "is inherent, at least to some degree, in the Fourth Amendment's prohibition against 'unreasonable searches and seizures.'" *Poole*, 630 A.2d at 1116 (citation omitted). 18 U.S.C. § 3109 (1994), which this jurisdiction explicitly adopted in D.C.Code § 23–524(a) (1996 Repl.) provides in pertinent part that:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance....

This court's jurisprudence has made clear the importance and underlying purpose of the knock and announce statute:

> [The knock and announce statute] reduces the potential for violence to both police officers and the occupants of the house into which entry is sought; it guards against the needless destruction of private property; and it symbolizes the respect for individual privacy summarized in the adage that "a man's [or woman's] house is his or [her] castle."

*Poole*, 630 A.2d at 1116 (citation omitted). However, there are two broad exceptions to the knock and announce statute which, if circumstances warrant, allow the police

to forcibly enter a home without waiting for an actual reply from the occupant. *Culp v. United States*, 624 A.2d 460, 462 (D.C.1993). The first exception is based on the concept of constructive refusal. If the police can reasonably infer from the actions or inactions of the occupants that they have been refused admission, the police may enter without waiting for an actual reply. *Id.* The second exception is based on exigent circumstances. *Id.* Under this theory, the police may enter a home to execute a warrant without waiting for a reply if they have reason to believe that the occupants are destroying evidence or if there is reason to believe that the officers executing the warrant are in danger. *Id.*

The trial judge found that the actions of the police were reasonable in this case because there were exigent circumstances which made their decision to forcibly enter the apartment appropriate. The trial court based its decision on the following uncontroverted facts: 1) the weapons present in the apartment had been seen in the waistbands of the occupants, making the guns readily accessible to the occupants; 2) the police were aware from a reliable source that the weapons would be used by the occupants to protect their property from robbers; 3) the approach to the premises would be in the open where the police could be viewed by occupants of the apartment; 4) the police would have to wait in a small confined area right outside the door to the apartment; and 5) the apartment door was wooden and, thus, easily penetrable by weapons fire. These circumstances, the court concluded, permitted the officers to forcibly enter the apartment Moore occupied, without giving him an adequate opportunity to respond peaceably to their presence.

■ This court spoke directly to the issue we are confronted with today in *Poole*. There, we set forth the test that must be satisfied to justify a forced entry based on a fear that the safety of the police may be compromised because of the possible presence and use of weapons:

> The government must show that the police had concrete, particularized evidence that reasonably lead them to believe that (1) there were weapons on the premises and (2) there was a realistic possibility that the occupant or occupants would use the weapons against them.

*Poole*, 630 A.2d at 1118. The two prong test in *Poole* is central to our determination of whether exigent circumstances based on the officers' fear for their own safety exist to permit suspension of the knock and announce requirements. *Poole* explained that, "police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements." *Id.* Consequently, in this case, we must decide whether the information relied on by the police, that they could encounter three men with guns in their waistbands, coupled with the other practical concerns of Sgt. Russell, constituted particularized evidence sufficient to lead to a reasonable belief that their safety would be endangered by waiting longer than they did. We are mindful that exigent circumstances do not exist anytime a search warrant is related to the seizure of guns because "to adopt such a generalized exception to the knock and announce requirement would amount to virtually rewriting this section." *Poole*, 630 A.2d at 1123.

■ As a preliminary matter, Moore contends in his brief on appeal that there is no evidence in the record that Sgt. Russell was aware that the suspects were carrying handguns to protect large quantities of drugs that were being sold out of the apartment. The record, however, reveals that Officer Thornton, in requesting the services of the ERT, told Sgt. Russell the "facts or information about what the warrant was about." Those facts as con-

tained in the affidavit supporting issuance of the search warrant included information regarding the sale of drugs and the intent of the suspects to use their weapons to protect their drugs. The mere fact that Sgt. Russell does not specifically testify that the large volume sale of drugs by the suspects or their stated intention to use their guns to protect their drug operation heightened his concern for the safety of his officers, does not lead this court to conclude that he was unaware of this information.

As in *Poole,* there was "clear and direct evidence [here] that the suspects possessed weapons ... on the premises ...." 630 A.2d at 1120. That evidence came from a reliable informant that while in the First Place apartment purchasing drugs he observed the three individuals with handguns in their waistbands. Therefore, there was every reason for the police to believe that there were weapons on the premises and that they would encounter armed individuals in the apartment.

Under the second prong of *Poole's* test, the government must show that there was a realistic possibility that the occupants would use the weapons against them. 630 A.2d at 1118. In *Poole,* we spoke of a person's propensity to use weapons. *Id.* Moore attempts to distinguish *Poole* and later cases by arguing that in those cases, unlike the present case, the police had information that the suspects for whom the warrant had been issued had a prior history of bad acts involving weapons. But the evidence of the prior use of a weapon is not required where, as here, the police knew the occupants were carrying weapons on their persons and had declared their intent to use them to protect their drug business. This evidence was sufficient for one to conclude that there was a realistic possibility that the occupants

would use their weapons against the police, if not purposefully, perhaps on the mistaken belief that the police were robbers.[4] Moreover, the trial judge correctly deferred to the officers' judgment that the absence of an invisible approach to the building and the officers confinement in a small vulnerable area increased the danger from knocking and waiting. *See Culp,* 624 A.2d at 463.

In many respects, the facts of this case are similar to the facts in *United States v. Lucht,* 18 F.3d 541 (8th Cir.1994), a ten co-defendant case involving the Omaha Chapter of the Hell's Angels Motorcycle Club. In *Lucht,* police officials, in the course of their investigation, executed several search warrants at various locations searching for drugs and other narcotics. In executing the warrant at the house of one of the defendants, the police found themselves bunched together on an enclosed porch in a difficult tactical situation. The officers knew that the individual against whom the warrant was issued had a criminal record and that his record included a weapons violation. The officers also knew that the suspect was on parole and that he was suspected of consummating a drug transaction within a relatively short period of time prior to the execution of the warrant. Based on their vulnerable tactical circumstances and the information they had about the suspect, the officers, after announcing their presence and purpose, waited six to eight seconds and forced entry. The Eighth Circuit Court of Appeals held that under the circumstances, the above outlined exigent circumstances excused the officers' failure to comply with the statutory knock and announce requirement.

In the present case, the facts supporting the reasonableness of the officers' actions in forcing entry after six to eight seconds

---

**4.** We understand Moore's contention that the purpose of the knock and announce statute is to inform the occupants of the identity of the police and their lawful purpose at the residence. However, we cannot ignore the practical concern of the high probability of confu-

sion on the part of the occupants as to who is attempting the enter—either because the occupants cannot discern the announcement by the police officers or possibly because the occupants believe that someone else is posing as a law enforcement agent.

are also persuasive. In this case, as in *Lucht,* the officers found themselves bunched together in a very vulnerable and tactically undesirable position at a location that had been the scene of a recent drug transaction. Moreover, unlike in *Lucht,* where the police were executing a search warrant for drugs, the police in this case were executing a warrant for weapons that they had probable cause to believe were being worn and were readily accessible to the occupants, and which the occupants of the apartment had stated they would use to protect their property. Finally, the police officers were aware that if the suspects were to start shooting, there was no place for them to get out of harm's way.

In reaching our decision, we are not unmindful of or unsympathetic to the privacy concerns that led to the enactment of the knock and announce statute. In this case, however, given the totality of the circumstances, the conduct of the police in knocking, announcing and waiting for six to seven seconds but not more before forcibly entering was a reasonable self-protective measure.

Accordingly, the judgments of conviction are hereby

*Affirmed.*